CORRECTED OPINION

RAMIREZ, J.
This is a petition for Writ of Prohibition wherein the wife, Louise Valdes-Fauli, seeks to disqualify the trial court from continuing to preside over this dissolution of marriage action. For the reasons submitted, the petition is well-founded and is hereby granted.
This is a dissolution of marriage case that involves a 32-year marriage. There are substantial assets worth several million dollars. In addition, it is alleged that the husband controls all of the marital assets. The husband is an international investment banker who serves a number of banking and financial institutions in different capacities. He also owns his own company. The 56-year-old wife is college-educated. She has not been employed for the last fourteen years but has, however, been actively involved with a number of charitable organizations. She is also presently the volunteer chairperson of the Miami Museum of Science and sits on the board of several philanthropic organizations.
The husband filed for dissolution in February 2004. When the trial court judge heard the wife’s motion for temporary alimony in July 2004, the following exchange took place:
The Court: What do you want to do with your life? /
Mrs. Valdes-Fauli: I have been involved with a number of charitable organizations over the last several years. I’m at present the chairman of the Miami Museum of Science, the Planetarium.
The Court: Awesome. A wonderful facility, wonderful program.
Mrs. ‘Valdes-Fauli: Thank you. I’m very, very enthusiastic.
The Court: You are a volunteer without being paid?
Mrs. Valdes-Fauli: I’m not paid, no sir.
The Court: So if you want to continue those charitable pursuits in a voluntary position as opposed to being paid—
Mrs. Valdes-Fauli: Yes.
The Court: So then you are seeking alimony from your husband.
Mrs. Valdes-Fauli: Yes.
The Court: So that you could pursue that?
Mrs. Valdes-Fauli: So that I can continue to live the life that I’ve lived for the last many years.
The Court: Right, which is what your lawyers have been telling you, is that right? I’m not asking specifically what they told you, but that is the standard that’s in all of these books I’ve read. So do you think you're going to end up being an alimony drone?
Mrs. Valdes-Fauli: I’m not sure what that means, sir.
*216 The Court: Drone. Do you know what a drone is? A queen in a hive is a drone.[1]
Mrs. Valdes-Fauli: You mean a worker?
The Court: No, because you don’t want to be a worker, right?
Mrs. Valdes-Fauli: Sir, I don’t want to have to go and get a job. I don’t want to.
Later in the hearing, when the wife expressed her feelings regarding the demise of her marriage, the trial court judge referred to her as a “woman scorned.” When the wife agreed with the judge that she “need[ed] some closure,” the trial court judge remarked that “closure” was the last thing she was going to get if she persisted with her claims:
The Court: And the way to get that closure is once I rule you’ll take all your appeals, spend another couple of hundred thousand dollars, the Third DCA will Say I’m right or not, in all probability they’ll say I was right. I have a lot of discretion as long as I make specific findings.
The trial court judge then belittled the need for forensic accountants, and declared that the husband was “getting eaten alive ...” by litigation costs. The trial court judge further advised the wife that if she chose to call her psychologist of ten years as a witness at trial, she would be subjected to an “independent psychological examination by some other person” and “that’s how all that money gets eaten away. Does it matter to you that the money is getting — ”
At this same hearing of July 29th, with a pending motion by the wife to continue the trial scheduled to commence on August 16th, 2004, the judge sua sponte rescheduled the trial for an earlier time or August 10th, 2004. The wife then filed a “Supplement to Motion for Continuance of Trial” and a motion for recusal on August 3rd, 2004. Both motions were hand-delivered that day to the judge’s chambers. The judicial assistant advised the wife’s counsel that, because the recusal motion had been filed, no further action could be taken while the motion was pending. Yet on August 4th, 2004, the court entered an order that granted the wife’s motion for continuance and reset the final hearing for September 1st, 2004. The court denied the motion for recusal as legally insufficient on August 5th, 2004.
Allegations in a motion to recuse or disqualify a trial judge are reviewed under a de novo standard as to whether the motion is legally sufficient as a matter of law. See § 38.10, Fla.Stat. (2004); Armstrong v. Harris, 773 So.2d 7 (Fla.2000); Peterson v. Asklipious, 833 So.2d 262 (Fla. 4th DCA 2002). A motion to recuse or disqualify a trial judge is legally sufficient when the alleged facts would create in a reasonably prudent person a well-founded fear of not receiving a fair and impartial trial. Johnson v. State, 769 So.2d 990 (Fla.2000); MacKenzie v. Super Kids Bargain Store, Inc., 565 So.2d 1332 (Fla.1990); Roy v. Roy, 687 So.2d 956 (Fla. 5th DCA 1997).
While appellate judges reviewing a transcript may understand that trial judges have a crowded docket and frequently make statements to encourage the parties to settle, it is not our perspective that controls, but rather whether the facts *217 alleged would place a reasonably prudent litigant in fear of not receiving a fair and impartial trial. Livingston v. State, 441 So.2d 1083, 1087 (Fla.1983); Hayslip v. Douglas, 400 So.2d 553, 556 (Fla. 4th DCA 1981). It is not our function to determine how the trial judge actually feels, but rather what feeling resides in the petitioner’s mind and the basis for such feeling. State ex rel. Brown v. Dewell, 131 Fla. 566, 179 So. 695, 697-98 (1938); Wargo v. Wargo, 669 So.2d 1123 (Fla. 4th DCA 1996). The question of disqualification focuses on those matters from which a litigant may reasonably question a judge’s impartiality rather than the court’s own perception of its ability to" act fairly and impartially. Livingston, 441 So.2d at 1086 (Fla.1983).
First, the trial court judge’s comments have to be viewed in the context of a case where the wife seeks an award of permanent alimony. In a case like this one where permanent alimony was a substantial issue to be decided, the trial court’s “alimony drone” comment alone was sufficient to place the petitioner in fear that she will not receive a fair and impartial trial. It is not unreasonable to interpret that remark as demeaning. A similar type of comment was made in Roy v. Roy, 687 So.2d 956 (Fla. 5th DCA 1997), where the trial judge referred to the former husband as “Mr. Dead Beat Man of the Year.” As in our case, the judge in Roy made this comment before any evidence was taken. The Fifth District Court of Appeal ruled that the motion for disqualification “should have been granted” because the comment was “legally sufficient to place appellant in fear that the trial judge had already determined to hold him in contempt.” Id. at 956.
Similarly, the trial court judge in the case before us next called the wife a “woman scorned,” stating that “[Hell] hath no fury like a woman scorned.” The judge told her that her feelings were “very typical” and that it explained her “motivation,” presumably for requesting permanent alimony, suggesting a pre-existing unfavorable opinion of women seeking permanent alimony out of anger. See Royal Caribbean Cruises, Ltd. v. Doe, 767 So.2d 626 (Fla. 3d DCA 2000)(following the denial of the cruise line’s motion for disqualification, the appellate court held that the motion should have been granted where the judge’s remarks suggested she had preexisting unfavorable opinions about the management and litigation tactics of the cruise line industry).
In addition, the trial court judge’s questions to the wife regarding her visits to a psychologist as a litigation ploy and the threat of subjecting her to an “independent examination” should her psychologist testify at trial; belittlement of the wife’s forensic accountant testimony; and his remark that the husband was “getting eaten alive” with litigation costs could individually and in the aggregate place the wife, as a reasonably prudent litigant, in fear that she would not receive a fair and impartial trial. See generally Deren v. Williams, 521 So.2d 150 (Fla. 5th DCA 1988)(in malpractice action, trial judge was required to recuse himself where he openly expressed sympathy toward cerebral palsy victims).
Finally, the trial court sua sponte moved up the scheduled trial while the wife’s motion for continuance was pending, then improperly granted her supplemental motion for continuance while the wife’s motion to recuse him was pending. A trial judge must first rule on a motion for disqualification before resolving any other matters. Fuster-Escalona v. Wisotsky, 781 So.2d 1063, 1065 (Fla.2000); Shah v. Harding, 839 So.2d 765, 766 (Fla. 3d DCA 2003); Loevinger v. Northrup, 624 So.2d 374, 375 (Fla. 1st DCA 1993); Stimpson Computing Scale Co., Inc. a Div. of Globe *218 Slicing Mach. Co., Inc. v. Knuck, 508 So.2d 482, 484 (Fla. 3d DCA 1987)(It is well settled that “[a] judge faced with a motion for recusal should first resolve that motion before making additional rulings in a case.... [A] recusal motion must be heard first.”). The granting of the continuance after the motion for recusal was filed could reasonably be seen as an attempt to cure one of the grounds contained in the motion for recusal and an abandonment by the court of its neutrality.
Whether taken separately or all together, the trial court’s words and actions reasonably gave the wife a legitimate fear that she would not receive a fair trial in this matter. We are mindful of, and agree with, the view expressed by the dissent. However, because of the specific and personalized nature of the remarks made by the trial judge, we feel that this case is an exception to that view. The remarks, and the wife’s legitimate fear, made the motion for disqualification legally sufficient. Accordingly, we grant the wife’s Petition for Writ of Prohibition.

. www.Dictionary.com defines a drone as ''[a] male bee, especially a honeybee, that is characteristically stingless, performs no work, and produces no honey. Its only function is to mate with the queen bee.” It also lists a second definition of "drone” as "[a]n idle person who lives off others; a loafer.”