943 So.2d 144 (2006)
PASTEUR MEDICAL CENTER, INC., et al., Petitioners,
v.
WELLCARE OF FLORIDA, INC., etc., et al., Respondents.
Nos. 3D06-826, 3D06-816.
District Court of Appeal of Florida, Third District.
June 28, 2006.
Rehearing and Rehearing Denied December 7, 2006.
*145 McIntosh, Sawran, Peltz & Cartaya and Douglas M. McIntosh, Robert C. Weill and Marilyn Garcia, Fort Lauderdale, for petitioners.
Boies, Schiller & Flexner and Jennifer G. Altman and Antonio C. Castro, Miami, for respondents.
Before FLETCHER and CORTIÑAS, JJ., and SCHWARTZ, Senior Judge.
Rehearing and Rehearing En Banc Denied December 7, 2006.
CORTIÑAS, Judge.
Petitioners seek a writ of prohibition or, alternatively, a writ of mandamus based on the trial judge's refusal to disqualify the Special Master, finding Petitioners' claims legally insufficient. Because we find that the Special Master's conduct does not reach the high threshold necessary for disqualification, we deny the petitions.

I. BACKGROUND
Ariadna Marrero, Luis Menes, and Julio Herrera are health insurance agents (collectively "Agents") and former employees of respondent, Comprehensive Health Management Inc. ("Comprehensive"), a provider of healthcare management services. Gerardo Necuze, Luis A. Perez, and Manuel Enriques are principals of Pasteur Medical Centers ("Pasteur"). The Agents managed the patient relations between Pasteur and respondent, Wellcare of Florida, Inc., f/k/a Wellcare HMO, Inc. ("Wellcare"), a health maintenance organization. *146 In December 2005, Respondents, Wellcare and Comprehensive, filed an action against the Agents and Pasteur (collectively "Petitioners"), alleging, inter alia, breach of contract and breach of confidentiality.
On December 22, 2005, the trial court appointed a Special Master[1] to oversee the interests of the patients in the transition phase while Wellcare separated from Pasteur. Specifically, the Special Master was to administer the orders set forth by the trial judge to assure the parties' compliance with federal guidelines and other laws and regulations, and to assure continuity of care for the patients. The Special Master was conferred, in part, the following powers:
It shall be up to the Court and/or the Special Master to determine the manner in which such compliance . . . shall be determined. To the extent that the Special Master desires to utilize covert investigatory tactics, he/she shall obtain prior Court approval without the necessity of notice to any of the parties. Further, the Special Master shall be free to communicate with counsel for the parties to obtain information or other materials, as he/she deems appropriate, relating to their services described hereunder.
On January 5, 2006, the trial court appointed attorney Joseph Zumpano ("Zumpano") as the Special Master upon the parties' selection and approval. On that same day, Zumpano provided full disclosure to the parties of his intent to hire the law firm of Zumpano Patricios & Winker, P.A. and its investigative arm, ZP & W Investigations, LLC, to effectuate the trial court's orders. At that time, Petitioners did not object.[2]
Thereafter, Petitioners filed various motions questioning Zumpano's authority under the order. On February 22, 2006, Zumpano sent a letter to the trial judge recommending the denial of the Agents' motion to vacate an order that approved the Special Master's course of action. Additionally, attorney Leon N. Patricios ("Patricios"), on Zumpano's behalf, submitted to the trial judge a courtesy copy of the Special Master's Interim Application for Award of Fees and Costs ("Interim Application for Fees"). The Interim Application for Fees, in pertinent part, specified that Petitioners: were causing unnecessary hearings; sought to thwart the trial court's efforts to put in place a Special Master; challenged the Special Master's ability to get the process moving; and were stalling the case.
On February 24 and 27, 2006, Petitioners filed motions for recusal and disqualification, contending that Zumpano, through his filings with the trial court, improperly assumed an adversarial role by advocating positions contrary to Petitioners' court filings and abandoning his impartial role. The trial court denied the motions as legally insufficient. Petitioners now seek review of these orders.
Florida Rule of Civil Procedure 1.490(d) specifies that the grounds for disqualifying a Special Master are the same as those to disqualify a judge. Fla. R. Civ. *147 P. 1.490(d). Regarding matters of impartiality, the "special master must hold himself to the same high standards applicable to the conduct of judges." Jenkins v. Sterlacci, 849 F.2d 627, 631-32 (D.C.Cir.1988)(citing U.S. v. Conservation Chemical Co., 106 F.R.D. 210, 234 (W.D.Mo.1985)). Thus, since the Special Master performs duties similar to a trial judge and is held to the same high standard, the same high threshold for the purposes of disqualification should apply. See id. at 631, n. 1.

II. STATEMENT BY THE SPECIAL MASTER
A motion for disqualification is legally sufficient "when the alleged facts would create in a reasonably prudent person a well-founded fear of not receiving a fair and impartial trial." Valdes-Fauli v. Valdes-Fauli, 903 So.2d 214, 216 (Fla. 3d DCA 2005)(citing Johnson v. State, 769 So.2d 990, 996 (Fla.2000); MacKenzie v. Super Kids Bargain Store, Inc., 565 So.2d 1332, 1335 (Fla.1990)). Specifically, "[t]he question of disqualification focuses on those matters from which a litigant may reasonably question a judge's impartiality rather than the court's own perception of its ability to act fairly and impartially." Valdes-Fauli, 903 So.2d at 217 (citing Livingston v. State, 441 So.2d 1083, 1086 (Fla. 1983)). Based on the facts presented in this case, we find insufficient evidence that the Special Master acted in such a manner that created in the litigants a well-founded fear of unfairness and impartiality.
Since the appointment of the Special Master, Petitioners have questioned his authority to effectuate his functions as ordered by the trial court. The trial court intended for the Special Master to be the "eyes and ears" of the court, and stated that the Special Master "would have the opportunity to get some aids to go and check what's going on at different facilities . . . and oversee the care of these [patients]." The trial court also allowed, with its prior permission and proper notice to the parties, the use of "covert investigatory tactics." From this language, it is clear that the trial judge intended for the Special Master to have broad powers in carrying out his duties.
Under these guidelines from the trial court, the Special Master initially sought to interview Petitioners, with counsel present, to gather the necessary information. In response, Petitioners challenged the Special Master's authority to conduct such interviews and set the matter for a hearing before the trial judge. During that hearing, the trial court allowed Zumpano to proceed accordingly, and commended Zumpano's efforts to gather information from the parties rather than proceed blindly in his efforts. Thereafter, Pasteur challenged the retention of Zumpano's firm and investigators, almost seven weeks after receiving full disclosure and consenting to the Special Master's retention. Finally, Petitioners challenged Zumpano's Interim Application for Fees alleging that Zumpano made improper and impartial statements in his attempt to keep the trial court informed of his progress in the matter.
We do not find that the Special Master's statements rise to the level of bias sufficient to create a reasonable fear in Petitioners that they will not receive a fair and impartial trial. The requirements for disqualification were established, in part, to prevent the process from being abused by one party for purposes of delay, and to prevent judge and master shopping, unrelated to the fairness and impropriety of the proceeding. See Livingston, 441 So.2d at 1086; Crespo v. Crespo, 762 So.2d 568, 570 (Fla. 3d DCA 2000). At a minimum, as the "eyes and ears" of the court, the Special Master informed the trial court of what it would have encountered in the *148 Special Master's absence. Ultimately, the trial court observed:
It's been the [Petitioners] who have tried after initially agreeing to everything, tried everything they could to stop this. . . . I've never seen such a flood of paper in 25 years of practice, and six years  five years on the bench.
Petitioners claim that Zumpano's statements in various communications with the trial court were improper and demonstrated a bias towards them. Yet, there is no evidence that Zumpano's remarks were of a "specific and personalized nature" sufficient to warrant disqualification. Valdes-Fauli, 903 So.2d at 218 (finding exceptional circumstances and disqualification proper when the trial judge, among other things, specifically made derogatory comments to a party for seeking alimony). On the contrary, Zumpano made comments regarding the progression of the case and issues that hindered his ability to proceed. This is not a case which would support a reasonable fear of unfairness, such as when the judge or his agent has predetermined certain facts against a party, see Kopel v. Kopel, 832 So.2d 108 (Fla. 3d DCA 2002), or questioned the credibility of a defendant, see Campbell Soup Co. v. Roberts, 676 So.2d 435 (Fla. 2d DCA 1995).
A Special Master, just as a trial judge, must be heard and be an active participant in the trial. See Kopel, 832 So.2d at 108-09 (Schwartz, J., specially concurring). The Special Master must be permitted to relay information regarding compliance with the court's orders, and the progress in carrying out such orders. "The task of the courts is too important, indeed too sacred, to be left to the litigants and their counsel alone. The meaningful participation of the trial judge [or his agent] is indispensable to that process." Valdes-Fauli, 903 So.2d at 219 (Schwartz, C.J., dissenting). The fact that the comments were made in the Interim Application for Fees, and not in a ruling or at the trial court's request, is irrelevant. Zumpano's actions were well within the mandate of the trial court's order providing that the Special Master shall be responsible for "overseeing and enforcing" its orders and keeping it abreast of his progress.

III. ROLE OF SPECIAL MASTER
Petitioners also argue that the Special Master improperly assumed an adversarial posture throughout the proceedings below by having Patricios personally attend certain hearings before the trial court. However, although not necessarily advisable, there is nothing inherently improper or adversarial in the attendance of the Special Master's agent during hearings which specifically addressed the scope of powers of and the course of action to be taken by the Special Master. This is distinguishable from attendance at proceedings which raise other types of issues, such as a summary judgment motion or a motion to dismiss, where advocates argue their positions regarding the underlying case and substantive findings are rendered.
Additionally, the Agents contend that Zumpano's filings support a conclusion that he was advocating to support his own decisions. We find this argument meritless since the Special Master or his agent may communicate with the trial court regarding matters of his own appointment, without assuming the role of an advocate.[3]

IV. CONCLUSION
The trial court found insufficient evidence to warrant disqualification of the *149 Special Master. We agree,[4] and find Petitioners' claims of bias insufficient to support a finding that Petitioners reasonably feared not receiving a fair and impartial trial. Accordingly, we deny the petitions.
Petitions for writs of prohibition and mandamus denied.
FLETCHER, J., concurs.
SCHWARTZ, Senior Judge (dissenting).
I believe that the circumstances, as fairly described by the majority, reflect that the master has entered into an intolerable adversary relationship with the petitioners and their counsel with respect to the vital issues of his own authority, duties and responsibilities (as well as the billable hours required to discharge them) which requires his disqualification. See Bundy v. Rudd, 366 So.2d 440 (Fla.1978); Dep't of Revenue v. Golder, 322 So.2d 1 (Fla.1975).
NOTES
[1] The Florida Supreme Court amended Florida Rule of Civil Procedure 1.490, changing references of "masters" to "magistrates," to conform to new legislation. See Amendments to the Fla. R. of App. P., the Fla. R. of Civ. P., etc., 887 So.2d 1090, 1090-91 (Fla.2004). For consistency with the lower court, we continue to use the term "master."
[2] Pasteur and the Agents have since filed several appeals regarding the appointment of the Special Master and the course of action taken by the trial court. See consolidated cases 3D06-598, -600, -657 & -809.
[3] An "advocate" is defined as "a person who assists, defends, pleads, or prosecutes for another." Black's Law Dictionary 60 (8th ed. 2001)(emphasis added). A Special Master, supporting his own decisions, cannot reasonably be found to act on behalf of another.
[4] Although we have conducted a de novo review in order to afford Petitioners' claims ample consideration, in light of the importance of a judge's impartiality, appellate review of a trial court's disqualification findings concerning a Special Master may be reviewable under an abuse of discretion standard. See Rios v. Ent. Ass'n Steamfitters Local Union 638 of U.A., 860 F.2d 1168, 1174-75 (2d Cir. 1988).