[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15278
_____

D.C. Docket No. 1:10-cv-24486-RNS


UNITED STATES OF AMERICA
ex rel. Marc Osheroff,

Plaintiff - Appellant,


versus


HUMANA, INC., et al.,

Defendants - Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 16, 2015)

Before TJOFLAT, JILL PRYOR and FAY, Circuit Judges.

JILL PRYOR, Circuit Judge:

This appeal follows the district court's dismissal of a qui tam complaint upon holding that the lawsuit was barred by the public disclosure provision of the False Claims Act. After careful review of the record and the briefs, and with the benefit of oral argument, we affirm.

I.

Relator Marc Osheroff operates medical office buildings in Miami and has considered opening a health clinic there since the early 2000s. While doing market research on health clinics, Mr. Osheroff learned that many area clinics provide a variety of free services to patients. Upon learning of these programs, Mr. Osheroff began to research the clinics' services in more detail by interviewing employees and patients. Mr. Osheroff has never been employed by or done business with any of the defendants.

Mr. Osheroff filed this qui tam action under seal on December 16, 2010, and the United States declined to intervene. Mr. Osheroff amended his complaint in December 2011, reducing the named defendants to three clinics and several health insurers that contract with the clinics. The clinics are Pasteur Medical Center, Inc. ("Pasteur"); CAC-Florida Medical Centers, LLC ("CAC"); and MCCI Group Holdings, LLC, which reached a settlement with Mr. Osheroff prior to this appeal. The health insurers are Humana Inc.; Humana Health Insurance Company of Florida, Inc.; Humana Medical Plan, Inc.; and CarePlus Health Plans, Inc., a

2

subsidiary of Humana Inc. (collectively, the "Humana defendants"). The Humana defendants all provide Medicare Advantage health plans to the clinics' patients and are paid by Medicare on a per-patient basis; the plans in turn pay the clinics based on patient enrollment.

The amended complaint includes information Mr. Osheroff gathered through his interviews, as well as information from the clinics' websites. Specifically, Mr. Osheroff alleges that the clinics provided, and the Humana defendants either knew of or promoted, a variety of free services for patients and health plan members, including transportation, meals, spa and salon services, and entertainment. The amended complaint includes a great amount of detail about these services. For example, the amended complaint alleges that: the clinics used limo-class vehicles to transport patients and "nearly all trips . . . contained two or fewer passengers even though the vehicles seat 8, 10 or more" passengers, Am. Compl. at 21, ¶ 130; CAC limos took 93 trips to Mr. Osheroff's medical office buildings in early 2010, 88 of which carried two or fewer people, *id*.; lunch at a CAC clinic on October 7, 2010 included "white rice, meat, [and] plantains, but the options change daily," *id.* at 29, ¶ 201; lunch at a Pasteur clinic on June 17, 2010 included "rice and beans, meat, bread, soft drink, and vegetables," *id.* at 31, ¶ 219; the clinics provided takeaway containers for lunch, *id.* at 29, ¶ 203; and the clinics held holiday and birthday parties with meals, soda, and cake. *Id.* at 32, ¶ 221.

3

Mr. Osheroff alleges that the clinics offered these services without regard for medical purpose or financial need and that the value of the services is more than nominal.  To show the worth of the clinics' services, the amended complaint includes the price of comparable services, including the taxi and limo rates in Miami-Dade County, *id.* at 23, ¶¶ 138-42, and the price of a Cuban sandwich and a hot lunch special at a local restaurant.  *Id*. at 37, ¶¶ 247-48.

The Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b), prohibits knowingly offering or providing remuneration for the purpose of inducing the recipient to purchase a good or service for which payment may be made under a federal health care program.  The Civil Monetary Penalties Law ("CMPL"), 42 U.S.C. § 1320a-7a(5), similarly prohibits offering or providing remuneration for the purpose of influencing the recipients to order or receive care from a particular provider, payment for which may be made under Medicare.  The amended complaint alleges that the defendants' actions violated both statutes.  Mr. Osheroff also alleges that this conduct violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, under an implied certification theory.[1]

The defendant clinics and the Humana defendants moved to dismiss the amended complaint, and the district court granted the motions.  Mr. Osheroff

---

[1] This theory of liability proposes that a defendant impliedly certifies compliance with underlying contractual or statutory duties when submitting claims to the government.  A violation of those duties thus renders the claims false for purposes of the FCA.  *See, e.g.*, *Shaw v. AAA Eng'g & Drafting, Inc.,* 213 F.3d 519, 531 (10th Cir. 2000).  We express no opinion as to the viability of this theory.

moved for reconsideration of the dismissal, which the district court denied.  Mr.

Osheroff timely appealed.

## II.

We review a district court's decision on a motion to dismiss *de novo*.

*Martes v. Chief Exec. Officer of S. Broward Hosp. Dist.*, 683 F.3d 1323, 1325

(11th Cir. 2012).  We also review questions of statutory interpretation and

retroactivity *de novo*.  *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993);

*Goldsmith v. City of Atmore*, 996 F.2d 1155, 1159 (11th Cir. 1993).  We review a

district court's denial of an evidentiary hearing for an abuse of discretion.  *United*

*States v. Brown*, 441 F.3d 1330, 1350 (11th Cir. 2006).

## III.

The FCA prohibits fraud against government programs.  Section 3730 of the

act allows either the United States government or private citizens to file civil

lawsuits to enforce the FCA, but it bars private qui tam suits based on publicly

disclosed information.  In 2010, Congress amended the FCA's public disclosure

bar as part of the Patient Protection and Affordable Care Act ("PPACA"), Pub. L.

No. 111–148, 124 Stat. 119 (2010).  This case raises issues related to the impact of

the amendments and the current application of the public disclosure bar.  In this

appeal, we must decide four questions:  (1) whether the 2010 amendments to

§ 3730 of the FCA apply retroactively; (2) whether the amended public disclosure

5

bar remains jurisdictional in nature; (3) whether the district court erred in considering documents extrinsic to the complaint and not holding an evidentiary hearing; and (4) whether the FCA's public disclosure provision bars this action. We address each question in turn.

## A.

The district court held that the 2010 amendments to the public disclosure provision do not apply retroactively, citing *Graham County Soil & Water Conservation District v. United States ex rel Wilson*, 559 U.S. 280, 283 n.1 (2010). The court applied the prior version of § 3730 to alleged conduct that occurred before the effective date of the amendments, March 23, 2010, and the amended version to conduct that occurred after that date.

Mr. Osheroff argues that the amended statute should apply to all conduct alleged in the amended complaint, regardless of when it occurred. But he waived this argument because he failed to raise it in the district court. *See Sterling Fin. Inv. Grp., Inc. v. Hammer*, 393 F.3d 1223, 1226 (11th Cir. 2004). In fact, his argument in the district court assumed the opposite. While he contended that certain state court filings should not be considered because the amended § 3730 removed them from the realm of "public" disclosures, he made this argument only in relation to alleged conduct that occurred on or after March 23, 2010, effectively conceding that the statute does not apply retroactively. Accordingly, we hold that

Mr. Osheroff has waived his argument regarding retroactive application of the amendments. For purposes of this appeal, we will apply the amended FCA provisions only prospectively.

B.

Next, we must decide whether the amended statute is jurisdictional or presents grounds for dismissal for failure to state a claim.[2] Before 2010, the FCA's public disclosure bar provided that "[n]o court shall have jurisdiction" over an action based on publicly disclosed allegations or transactions. 42 U.S.C. § 3730(e)(4) (2006). The PPACA amended this section, which now provides that a "court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in certain enumerated sources. 42 U.S.C. § 3730(e)(4) (2012).

The prior version of § 3730(e)(4) was explicitly a jurisdictional bar, and motions to dismiss based on this section were considered under Federal Rule of Civil Procedure 12(b)(1). *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 467-68 (2007). Some courts have held that the amended version of § 3730(e)(4)

---

[2] If the statute presents a jurisdictional bar, then a motion to dismiss would be considered under Federal Rule of Civil Procedure 12(b)(1). Under that rule, a court must weigh the parties' evidence, at least for factual attacks, as are made here. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). If the statute instead presents grounds for dismissal, a motion to dismiss would be considered under Rule 12(b)(6), and a court must take the facts alleged in the complaint as true, construing them in the light most favorable to the plaintiff. *Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

merely provides grounds for dismissal, rather than a jurisdictional bar.  *See, e.g.*, *United States ex rel. May v. Purdue Pharma L.P.,* 737 F.3d 908, 916-917 (4th Cir. 2013), *petition for cert. filed*, 82 U.S.L.W. 3586 (U.S. March 25, 2014) (No. 13-1162) ("In our view, these changes make it clear that the public-disclosure bar is no longer a jurisdiction-removing provision."); *United States ex rel. Harman v. Trinity Indus.*, No. 2:12-CV-00089-JRG, 2014 WL 47258, at *3 (E.D. Tex. Jan. 6, 2014) ("[The 2010 revision] recharacterizes the public disclosure bar as a ground for dismissal—effectively, an affirmative defense—rather than a jurisdictional bar.").  Here, however, the district court assumed that the amended statute presents the same jurisdictional bar as the prior version and analyzed the defendants' motions to dismiss under Rule 12(b)(1).

We conclude that the amended § 3730(e)(4) creates grounds for dismissal for failure to state a claim rather than for lack of jurisdiction.  The plain language of the new provision commands this interpretation: it instructs courts to dismiss an action when the public disclosure provision applies.  Further, Congress removed the prior language that rendered the public disclosure bar jurisdictional in nature.  *Brewster v. Gage*, 280 U.S. 327, 337 (1930) ("The deliberate selection of language so differing from that used in the earlier acts indicates that a change of law was intended."); *DirecTV, Inc. v. Brown*, 371 F.3d 814, 817 (11th Cir. 2004) ("[C]hanges in statutory language generally indicate an intent of Congress to

change the meaning of the statute.") (internal quotation marks, alterations, and citations omitted). We also find it significant that Congress did not remove similar jurisdictional language from surrounding provisions, § 3730(e)(1) and (2),[3] which suggests that the amended § 3730(e)(4) should operate differently than those other provisions. The amended section also provides that the government can oppose dismissal, allowing the case to proceed even if the public disclosure provision would otherwise apply. Given this language, we cannot read the clause as a jurisdictional bar because doing so would allow the government to cure a jurisdictional defect simply by opposing a motion to dismiss. *See, e.g.*, *McCoy v. United States*, 266 F.3d 1245, 1249 (11th Cir. 2001) ("[P]arties cannot by acquiescence or agreement confer jurisdiction on a federal court. . . .").

Accordingly, we will treat defendants' motions to dismiss as motions made under Federal Rule of Civil Procedure 12(b)(6) as to the claims based on alleged conduct that occurred on or after March 23, 2010.

## C.

Mr. Osheroff next makes two separate but related arguments: (1) the district court should not have considered documents extrinsic to the complaint because

---

[3] Section 3730(e)(1) states that "[n]o court shall have jurisdiction over an action brought by a former or present member of the armed forces under subsection (b) of this section against a member of the armed forces arising out of such person's service in the armed forces." Section 3730(e)(2)(A) states that "[n]o court shall have jurisdiction over an action brought under subsection (b) against a Member of Congress, a member of the judiciary, or a senior executive branch official if the action is based on evidence or information known to the Government when the action was brought."

Rule 12(b)(6) standards apply, and (2) even if Rule 12(b)(1) applies, the district court should not have ruled on the defendants' factual challenge without first allowing discovery and/or holding an evidentiary hearing. Mr. Osheroff has forfeited his second argument, however, because he failed to request an evidentiary hearing or further discovery in the district court. *See United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1280-81 (11th Cir. 2009).

As regards Mr. Osheroff's first argument, all of the evidence at issue here was properly before the district court, regardless of which Rule 12 standard applies. For purposes of Rule 12(b)(1) review for a factual attack on jurisdiction, which applies to conduct alleged to have occurred on or prior to March 23, 2010, the district court was permitted to consider extrinsic documents, including all of the documents in the record here. *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). For purposes of Rule 12(b)(6) review, which applies to conduct alleged to have occurred on or after March 23, 2010, a court generally may not look beyond the pleadings. *See Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1266 n.11 (11th Cir. 1997). The pleadings include any information attached to a complaint. Fed. R. Civ. P. 10(c); *Crenshaw v. Lister*, 556 F.3d 1283, 1291 (11th Cir. 2009). We have explained, however, that a district court may consider an extrinsic document even on Rule 12(b)(6) review if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged. *SFM*

10

*Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).  In

addition, a district court may consider judicially noticed documents.  *Bryant v.*

*Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

Here, the district court considered documents that were attached to Mr.

Osheroff's amended complaint and were part of the pleadings.  The court also took

judicial notice of the complete list of documents in the defendants' unopposed

motion for judicial notice, including five *Miami Herald* articles, two

advertisements in the *Miami Herald*, the transcript of a hearing in another case

involving a defendant clinic in state court, and the Special Master's Report in that

case.[4]  None of these documents was improperly considered for the purposes of a

Rule 12(b)(6) motion.

### D.

Having disposed of the preliminary issues, we now consider whether the

FCA's public disclosure provision bars this lawsuit.  The prior version of

§ 3730(e)(4) prohibited qui tam suits "based upon" publicly disclosed allegations

or transactions unless the plaintiff was an "original source" of the information

contained in the complaint.  42 U.S.C. § 3730(e)(4) (2012).

---

[4] Even if Mr. Osheroff had preserved an objection to the defendants' motion, the court properly took notice of these documents.  Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage.  Fed. R. Evid. 201; *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. Fla. 2013).  And courts may take judicial notice of documents such as the newspaper articles at issue here for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements).  *See Bryant*, 187 F.3d at 1278 n.10.

In *Cooper v. Blue Cross Blue Shield of Florida, Inc.*, this Court articulated a three-part test for deciding if the public disclosure bar in the prior version of the statute applies: "(1) have the allegations made by the plaintiff been publicly disclosed; (2) if so, is the disclosed information the basis of the plaintiff's suit; and (3) if yes, is the plaintiff an 'original source' of that information." 19 F.3d 562, 565 n.4 (11th Cir. 1994).

The amended public disclosure provision prohibits lawsuits where the allegations in the complaint are "substantially the same" as (rather than "based upon") allegations or transactions contained in public disclosures, unless the plaintiff is an original source. 42 U.S.C. § 3730(e)(4) (2012). We will apply this standard in place of the second prong of the *Cooper* test when analyzing claims governed by the amended provision.

1.

Under the *Cooper* test, we first ask whether the allegations or transactions at issue were publicly disclosed. To answer this question, we must consider whether the sources on which the defendants rely fall into the statute's enumerated categories of sources that are considered public. This appeal concerns two of those categories: court filings and news media.

The defendants rely in part on disclosures made in Florida state court in the case of *Pasteur Med. Center, Inc. v. Wellcare of Florida, Inc.*, 943 So. 2d 144 (Fla.

12

Dist. Ct. App. 2006) ("the *Wellcare* litigation").  Before the 2010 amendments to the FCA, information disclosed in both federal and state court proceedings was considered publicly disclosed.  *Graham Cnty.*, 559 U.S. at 283.  After the 2010 amendments, only information disclosed in federal court proceedings may be considered public disclosures.  42 U.S.C. § 3730(e)(4)(A)(i) (2012).  Accordingly, the *Wellcare* litigation disclosures are public for purposes of the FCA only with respect to allegations in the amended complaint based on conduct that occurred before March 23, 2010.

Documents from the *Wellcare* litigation disclose information about Pasteur's practices, including providing food and haircuts.[5]  The Special Master's Report in the case also discussed at length Pasteur's provision of free coffee and pastries, various holiday parties featuring free food and entertainment, free breakfast and lunch, and free transportation.  The special master concluded that Pasteur's practices could violate the AKS in the aggregate and recommended that Pasteur "be required to create a costs tracking methodology to ensure compliance" with the AKS.  Special Master's Final Report & Recommendation at 94.

Next, the defendants rely on disclosures that they contend qualify as "news media," and thus are public disclosures under the statute, including articles in the

---

[5] While the *Wellcare* litigation documents only qualify as public disclosures for alleged conduct prior to March 23, 2010, as discussed below, Pasteur's website is sufficient to disclose the alleged conduct on or after March 23, 2010.

*Miami Herald*, newspaper advertisements, and the clinics' own websites.

Newspaper articles clearly qualify as news media.  *See Graham Cnty.*, 559 U.S. at

300.  The *Miami Herald* articles describe various clinic services.  For example, the

article "Upbeat Checkups" disclosed in March 2007 that the defendants provided

"free exercise classes," "free lunch," daily social events, "free coffee and breakfast

pastries," and free transportation to and from the clinics.[6]  John Dorschner, *Upbeat*

*Checkups*, MIAMI HERALD, Mar 12, 2007 at 22.  The article noted that "patients get

Ritz-Carlton treatment" and "everything is paid for by taxpayer dollars."  *Id*.

Another *Miami Herald* article from 2001 described a CAC clinic as providing a

"wealth of services, including transportation to and from the clinics."  Shannon

Tan, *Diagnosis is Confusion as Patients Flood Clinics*, MIAMI HERALD, Dec. 8,

2001, at 1C.

This Court has not yet determined whether the scope of "news media" as

used in § 3730(e)(4) includes sources such as advertisements or websites.  The

Supreme Court has noted, though, that the term has "a broad[] sweep."  *Graham*

*Cnty.*, 559 U.S. at 290; *see also Schindler Elevator Corp. v. United States ex rel.*

*Kirk*, __ U.S. __, 131 S. Ct. 1885, 1891 (2011).  District courts in the Eleventh

Circuit and in other circuits have determined that the term includes publicly

available websites.  *See, e.g.*, *United States ex rel. Simpson v. Bayer Corp.*, No. 05-

---

[6] The article specifically mentions CAC health clinics and Humana.

14

3895, 2013 WL 4710587, at \*7 (D.N.J. Aug. 30, 2013) ( "[P]romotional website[s] geared toward the dissemination of information" could qualify as news media); *United States ex rel Green v. Serv. Contract Educ. & Training Trust Fund*, 843 F. Supp. 2d 20, 32-33 (D.D.C. 2012) ("readily accessible" promotional websites qualified as news media); *see also United States ex rel. Brown v. Walt Disney World Co.*, No. 6:06-cv-1943, 2008 WL 2561975, at \*13 (M.D. Fla. June 24, 2008) (Wikipedia pages and legal notices in newspapers constitute "news media"). District courts in other circuits have found that advertisements in a newspaper also qualify. *See, e.g., United States ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 519 (N.D. Tex. 2012); *United States ex rel. Ondis v. City of Woonsocket, R.I.*, 582 F. Supp. 2d 212, 217 (D.R.I. 2008).

Because the term "news media" has a broad sweep, we conclude that the newspaper advertisements and the clinics' publicly available websites, which are intended to disseminate information about the clinics' programs, qualify as news media for purposes of the public disclosure provision. Like the *Miami Herald* articles, these sources also discuss the clinics' free services and programs. An advertisement in the *Miami Herald* stated that one of the Humana defendants, CarePlus, provided health plans with benefits including "$0 for unlimited transportation." CarePlus Advertisement, MIAMI HERALD, Oct. 26, 2010, at 20A. In addition, CAC's website, in the version attached to the amended complaint,

15

disclosed "free transportation services and a variety of educational programs and group activities," Am. Compl. Ex. 1 at 3; "[c]omplimentary lunch . . . on a daily basis," *id*.; and "massage, [and] monthly birthday parties." *Id*. at 4. Pasteur's website, in the version attached to the amended complaint, disclosed "unlimited transportation services," spa centers, social activities, and beauty salons. Am. Complaint, Ex. 2 at 1.

Based on the sources in question here, the first prong of the *Cooper* test is met. The allegations or transactions on which the defendants rely in support of their motions to dismiss have been publicly disclosed.

### 2.

The second part of the *Cooper* test asks whether the disclosed information forms the basis of the plaintiff's lawsuit. "[A] plaintiff basing an FCA qui tam claim *in any part* on . . . publicly disclosed information must demonstrate that the plaintiff is an original source of that information." *Battle v. Bd. of Regents*, 468 F.3d 755, 762 (11th Cir. 2006) (emphasis added). Under the amended statute, we must also analyze whether the complaint's allegations are "substantially the same" as the publicly disclosed allegations or transactions. 31 U.S.C. § 3730(e)(4) (2012). We have described the second prong of the *Cooper* test as a "'a quick trigger to get to the more exacting original source inquiry.'" *Cooper*, 19 F.3d at

16

568 n.10 (quoting *United States ex rel. Precision Co. v. Koch Ind.*, 971 F.3d 548, 552 (10th Cir. 1993)).

Mr. Osheroff argues that his amended complaint is not "based on" or "substantially the same" as the public disclosures because the disclosures do not contain any allegations of wrongdoing. He relies on language in *Cooper*, where we stated that a source was not a public disclosure because it did "not allege that [defendant] in its capacity as a primary insurer actually engaged in wrongdoing." *Id.* at 567. We agree with the district court that Mr. Osheroff reads *Cooper* too narrowly. In *Cooper*, we rejected the disclosure in question because it discussed the defendant "only in the context of its role as an intermediary responsible for monitoring payment to hospitals" and not "in its capacity as a primary insurer," which was the focus of the complaint. *Id.* *Cooper* does not require each source to contain an allegation of wrongdoing. Indeed, § 3730(e)(4) itself requires only disclosures of "allegations *or transactions*," suggesting that allegations of wrongdoing are not required. 42 U.S.C. § 3730(e)(4) (2012) (emphasis added). And, in any case, the disclosures here, particularly that the clinics' free services were all "paid for by taxpayer dollars," Dorschner, *supra*, at 22, are sufficient to raise an inference of fraud under the AKS or CMPL.

The amended complaint plainly is based, at least "in . . . part," on the publicly disclosed information discussed above. *Battle*, 468 F.3d at 762. The

17

allegations in the complaint are also substantially similar to the publicly disclosed information. Mr. Osheroff's essential allegation is that the clinics provided a wealth of free services. The public sources fully disclose that the defendant clinics provided such services, including transportation, meals, entertainment, and spa services, at no cost. Because the second prong is a "quick trigger," *Cooper*, 19 F.3d at 568 n.10, the significant overlap between Mr. Osheroff's allegations and the public disclosures is sufficient to show that the disclosed information forms the basis of this lawsuit and is substantially similar to the allegations in the complaint.

3.

Our final inquiry under *Cooper* is whether Mr. Osheroff is an original source of the information in the amended complaint. Under the prior version of § 3730, the plaintiff's knowledge must have been direct and independent for the plaintiff to qualify as an original source. 31 U.S.C. § 3730(e)(4)(B) (2006). In *Cooper*, we held that the plaintiff met this standard because he had acquired his information through years of processing his own claims with Blue Cross Blue Shield of Florida. 19 F.3d at 568. We also noted that the plaintiff's information was "potentially specific, direct evidence" of fraud and was "more than background information which enables him to understand the significance of a more general public disclosure." *Id.* at 568 n.12. In contrast, in *McElmurray v. Consolidated Government of Augusta-Richmond County*, this Court held that the plaintiffs were

18

not original sources because they merely possessed background information about the defendants' environmental violations that allowed them to understand, based on public disclosures, that the defendants were committing fraud. 501 F.3d 1244, 1254 (11th Cir. 2007). Having background knowledge "does not mean that they had knowledge independent of the publicly disclosed information as to the certifications alleged to be false." *Id.*

Under the amended statute, an original source is someone who has "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." 42 U.S.C. § 3730(e)(4)(B) (2012). This Court has not yet interpreted this statutory provision.

Mr. Osheroff argues that he is an original source because he conducted his own investigation of the programs offered at the clinics. The amended complaint includes some details that are not present in the public disclosures, such as the type of food the clinics served for lunch, the destinations of some of the free transportation, the frequency of salon services, and the price of substitute services or goods. Mr. Osheroff claims that this information is direct and independent because of his investigation and that it materially adds to the public disclosures because it shows that the clinics' services were more than nominal in value. [7]

---

[7] The Office of the Inspector General has interpreted the AKS not to prohibit gifts of nominal value, which are defined as gifts or services that have a retail value of no more than $10 individually and $50 in the aggregate per patient per year. 65 Fed. Reg. 24400, 24410-11.

19

We are not persuaded.  Under the AKS, any remuneration or offer of remuneration is illegal.  42 U.S.C. § 1320a-7b(b).  The public disclosures show that the clinics offered many free services to their patients.  At most, Mr. Osheroff's complaint adds background information and details relating to the value of the services offered, making it somewhat more plain that the clinics' programs could violate the AKS.  However, background information that helps one understand or contextualize a public disclosure is insufficient to grant original source status under the previous version of the statute.  *McElmurray*, 501 F.3d at 1254; *Cooper*, 19 F.3d at 568.

Similarly, under the amended statute, we conclude that Mr. Osheroff's information does not materially add to the public disclosures, which were already sufficient to give rise to an inference that the clinics were providing illegal remuneration to patients.  *See United States ex rel. Kraxberger v. Kan. City Power & Light Co.*, 756 F.3d 1075, 1079 (8th Cir. 2014) (holding that a plaintiff's information did not materially add to the public disclosures because the disclosures already revealed "'the essential elements comprising that fraudulent transaction . . . so as to raise a reasonable inference of fraud.'") (quoting *United States ex rel. Rabushka v. Crane Co.*, 40 F.3d 1509, 1514 (8th Cir. 1994)).  Our holding also comports with the purpose of the original source doctrine, which is to "increase private citizen involvement in exposing fraud . . . while preventing opportunistic

20

suits by private persons who heard of fraud but played no part in exposing it."
*Cooper*, 19 F.3d at 565.  We do not think that Mr. Osheroff's complaint is of the
sort meant to be protected by the original source doctrine.

IV.

Under the prior or amended version of § 3730 of the FCA, Mr. Osheroff
cannot overcome the public disclosure bar.  Accordingly, we affirm the district
court's dismissal of his complaint with prejudice.

**AFFIRMED.**