[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-13670

_____

UNITED STATES OF AMERICA,
ex rel Robert V. Smith, et al.,

                                                    Plaintiffs,

ROBERT V. SMITH,

                                        Plaintiff-Appellant,

*versus*

JAY ODOM,
OKALOOSA COUNTY BOARD OF COUNTY
COMMISSIONERS,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:20-cv-03678-MCR-ZCB

_____

Before NEWSOM, GRANT, and ABUDU, Circuit Judges.

GRANT, Circuit Judge:

The owner of an airport (known in this context as an airport sponsor) can either provide aeronautical services—like fueling and aircraft maintenance—itself or farm them out to third-party companies, known as fixed-base operators. If a sponsor chooses the latter, guardrails are in place to ensure adequate competition. Federal law requires airport sponsors seeking federal funding to certify that they will not give any fixed-base operator an exclusive right to offer services at their airport. In 2014, multiple news outlets published articles revealing that an airport sponsor had likely done just that: the owner of one fixed-base operator at the Destin Airport had quietly bought the other, even while the airport's sponsor still certified to the Federal Aviation Administration that it was not giving any service provider an exclusive right to operate at the airport.

About five years later, after those two operators had officially merged, Robert Smith asked the airport sponsor to let him in on the game—he wanted to run a second fixed-base operator at the airport. When his request was declined, Smith sued—but not for the right to bring his company in at the airport. Instead, he

alleged that both the airport sponsor and the former owner of the two airport service companies that had merged had violated the False Claims Act by falsely certifying to the government that they were complying with the grant assurances for fixed-base operators. The district court dismissed Smith's complaint with prejudice after finding the Act's public disclosure bar foreclosed his claims; the same allegations, after all, had been featured in news articles years before.  We agree, and affirm the district court.

## I.

The Destin Executive Airport is sponsored by Okaloosa County, which has received millions of dollars in federal and state grants for airport improvements.  An airport sponsor receiving financial assistance through federal grants must make various written "assurances" to the government to be eligible for funding. 49 U.S.C. § 47107(a).  In other words, the sponsor must certify to the government that it will do or not do certain things.  One such assurance is that the sponsor will not grant an "exclusive right to use the airport" to any single "fixed-base operator."  *Id.* § 47107(a)(4).    Fixed-base operators are commercial entities "providing aeronautical services such as fueling, maintenance, storage, ground and flight instruction, etc. to the public."  Airport Compliance Manual, FAA Order 5190.6B § 8.9 n.25 (Sept. 30, 2009).

Until 2009, Miracle Strip Aviation was the sole fixed-base operator at the airport.  That year, the airport added a second, Destin Jet, owned by Jay Odom.  According to the operative complaint, which we credit at this stage, plaintiff Robert Smith

received flight training from Miracle Strip Aviation in 1985 and worked as a commercial pilot. His work allowed him to interact regularly with both fixed-base operators and their employees.

In 2012, Miracle Strip was acquired by Regal Capital. On paper, Phillip Ward and Jack Simmons owned Regal Capital. But according to Smith, the purchase of Miracle Strip was actually funded by Odom, the owner of Destin Jet—Ward and Simmons were merely "strawmen." The County learned about the acquisition, but not the alleged strawman scheme, in early 2013. It approved an assignment of Miracle Strip's lease to Regal Capital, and Miracle Strip was renamed Regal Air. Less than a year later, Sterling Diversified—owned by Odom and two others—acquired Regal Capital (and Regal Air). The County learned that Odom owned Regal Air in March 2014.

At least two news outlets reported these events. On March 29, 2014, an article in the Northwest Florida Daily News reported that "a company associated with Destin Jet owner Jay Odom bought out the competition at Destin Airport." The article quoted the airport director as declaring that Odom's actions "violated two Federal Aviation Administration grant assurances." It also alleged that Odom told airport administrators that two fixed-base operators "could not co-exist at Destin Airport in the current environment of declining general aviation activity." Apparently that argument did not fall on deaf ears. Okaloosa County Airports Director Sunil Harman acknowledged that a "declining market since 2008" made him "fairly confident" that the case was

"compelling enough to point to a single fixed base operator at the airport."

Aviation International News chronicled the story a little more than a month later, reporting that airport officials and owners of Destin Jet were working to resolve a dispute involving "county anti-trust safeguards and FAA grant assurance violations that resulted when the owners of Destin Jet allegedly purchased rival provider Regal Air Destin at the end of last year." The article also said that Harman agreed that fuel sales data suggested the airport could not support two fixed-base operators.

Smith alleges that in September 2014, the County reported Regal Air's ownership change to the FAA and asked whether the acquisition would result in a violation of its exclusive-rights grant assurances. In response, he says, the FAA cautioned the County on "issues related to exclusive rights" and suggested obtaining a legal opinion from the FAA's Office of General Counsel.

But that never happened. Instead, the County moved forward with authorizing Destin Jet and Regal Air to "operate under common ownership and brand." The County, Smith says, was concerned that sustaining two operators was not viable due to declining fuel sales, a downturn in aviation activity, loss of airport revenues, and lease compliance issues. And in the County's view, it had raised its concerns "regarding compliance with the grant assurances" with the FAA. The FAA, in turn, had responded that "the acquisition of a competing [fixed-base operator], even if it results in a single [fixed-base operator] provider," is a "prevalent

6                    Opinion of the Court                 23-13670

practice" that "does not in itself constitute" a violation of grant assurances.

Odom sold Destin Jet (which had merged with Regal Air) in 2016. About three years later, Smith approached the County about establishing a competing fixed-base operator at the airport. He proposed leasing one of the two existing fixed-base operator locations that were being run by a single operator or leasing space on the airport to build a third location. The County denied his request, citing both the preexisting leases and a lack of available land. After his request was denied, Smith brought a qui tam action as a relator under the False Claims Act against Odom and the County.[1] Smith alleged that Odom's acquisition of Regal Air, together with his ownership of Miracle Strip, had created an exclusive right for a single fixed-base operator, which meant the County had made false certifications to the government in its funding requests. Smith added that the County had maintained that exclusive right by (1) approving the merger between Destin Jet and Regal Air and (2) denying his request to establish a competing fixed-base operator. Smith identified over forty times between 2012 and 2019 in which the County allegedly made false statements in grant applications, resulting in over $30 million in funding.

---

[1] Smith also sued under Florida's False Claims Act. *See* Fla. Stat. § 68.082 (2024). Because the Florida statute is modeled after the federal False Claims Act, the "same standard is applied to the evaluation of the claims under both statutes." *United States ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033–34 n.5 (S.D. Fla. 2007). We therefore consider them together.

After Smith amended his complaint, both Odom and the County moved to dismiss. The district court dismissed the amended complaint with prejudice for two reasons. *First*, the court determined that the False Claims Act's public disclosure provision barred Smith's suit because the allegations in the complaint were publicly disclosed in the two 2014 news articles. *Second*, the court concluded that the complaint failed to satisfy the heightened pleading standard required for fraud claims. The court later denied Smith's request for leave to amend and to amend the judgment. This is his appeal.

## II.

"We review a dismissal with prejudice for failure to state a claim under the False Claims Act de novo." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). "In doing so, we accept the allegations in the complaint as true and construe them" in the relator's favor. *Id.* We review the denial of a motion for leave to amend a complaint for abuse of discretion, but we review a decision that a particular amendment to the complaint would be futile de novo. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).

## III.

"The False Claims Act targets just that—false claims." *Hickman v. Spirit of Athens, Ala., Inc.*, 985 F.3d 1284, 1285 (11th Cir. 2021). Among other things, the Act prohibits (1) knowingly presenting a false or fraudulent claim for approval or payment to the government and (2) knowingly making or causing a false

record or statement to be made that was material to a false or fraudulent claim. *See* 31 U.S.C. § 3729(a)(1)(A)–(B).

To ferret out false claims, the Act relies on private individuals, who often have a front-row seat to fraud against the government—and are sometimes in an even better position than the government to identify that fraud. So one of the Act's "primary purposes" is to incentivize those people to help the government get its money back. *United States ex rel. Jacobs v. JP Morgan Chase Bank, N.A.*, 113 F.4th 1294, 1299 (11th Cir. 2024) (quotation omitted). To that end, private individuals who know about false claims against the government—called relators in this context—can file civil lawsuits known as qui tam actions to bring the fraud to light. *See* 31 U.S.C. § 3730; *Jacobs*, 113 F.4th 1294 at 1299–1300. A successful qui tam suit results in money damages for both the relator and the government. *See* 31 U.S.C. § 3730(d).

But if the fraud and false claims allegations have already been publicized, only the original source of that information can sue. *See id.* § 3730(e)(4)(A)–(B). Otherwise, copycat lawsuits would flood the system, generating less helpful relators at best and exploitative vultures at worst—in neither case making it any more likely that the government would recover for fraudulent claims. *See United States ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1353 (11th Cir. 2021). That's why a qui tam suit must be dismissed if "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" unless "the person

bringing the action is an original source of the information."  31 U.S.C. § 3730(e)(4)(A).

Public disclosure can occur in a variety of ways according to the statute.    News coverage is the most obvious.    *Id.* § 3730(e)(4)(A)(iii).  A court case is another, as is a congressional hearing.  *Id.* § 3730(e)(4)(A)(i)–(ii).  The public disclosure provision does not strip relators of valid claims if a media source scoops the allegations, however.  A relator can still bring suit if he is an original source—someone who had already voluntarily disclosed the information to the government before the public disclosure or someone who has "knowledge that is independent of and materially adds to the publicly disclosed allegations."    *Id.* § 3730(e)(4)(A)–(B).

Three questions determine whether the public disclosure bar applies.  The first is whether the same general allegations in the plaintiff's complaint have already been publicly disclosed.  *See Jacobs*, 113 F.4th at 1300.  If yes, we consider whether those two sets of allegations are "substantially the same."  *Id.* (quotation omitted).  If that too is a yes, we ask whether the plaintiff is an original source of the information.  *Id.*

Neither party disputes that news articles "clearly qualify as news media."  *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 813 (11th Cir. 2015).  Here, the district court took judicial notice of the two 2014 news articles, both of which discuss the consolidation of the two fixed-base operators and the resulting grant assurance violations.

But Smith argues that these articles do not contain any "allegations" because the "limited facts" in the public domain "do not allow the conclusion that a fraud has occurred." That's not so. To allege fraud, one need only present a claim or statement submitted to the government and "the true set of facts" showing that the claim or statement is not true. *Bibby*, 987 F.3d at 1353 (quotation omitted). The articles here described the County's grant assurances related to federal funding, noted that federal money "comes with strings attached," and explained that when Destin Jet acquired the only other fixed-base operator at the airport the County violated two of these assurances. These statements are more than enough to meet the standard for public disclosure.

That brings us to whether the allegations in the complaint are substantially the same as those in the public disclosures. Smith insists that they are not. He says that the complaint, unlike the articles, discusses the strawman scheme and the County's actions after Odom gained control of both fixed-base operators. But substantially the same "does not mean identical." *Jacobs*, 113 F.4th at 1302 (emphasis deleted). "Significant overlap between the plaintiff's allegations and the public disclosures is sufficient to show that the disclosed information forms the basis of the lawsuit and is substantially similar to the allegations in the complaint." *Id.* (alterations adopted and quotation omitted). It is not open season, in other words, for would-be relators who have one piece of a puzzle that is already largely complete.

The articles here outlined the same scheme that Smith raises in his complaint.  Both examined the conflict created by Odom's acquisition of Regal Air.  In fact, one opened: "Late last year, a company associated with Destin Jet owner Jay Odom bought out the competition at Destin Airport."  As for the grant assurances, one article explained that Odom's acquisition of the competing fixed-base operator "violated two Federal Aviation Administration grant assurances," and the other said that airport officials were "working to resolve a dispute involving county anti-trust safeguards and FAA grant assurance violations that resulted when the owners of Destin Jet allegedly purchased rival provider Regal Air Destin at the end of last year."  Both reported Harman's belief (echoed in Smith's complaint) that the airport could not support multiple fixed-base operators.

Smith argues that these allegations are not substantially the same as his own because the articles discuss only violations due to *Odom's* actions, whereas he alleges that the *County's* conduct led to additional violations.  He highlights two actions that post-dated the articles: (1) the County's failure to get approval from the FAA before merging the two fixed-base operators in late 2014; and (2) its denial of his request to open a competing fixed-base operator in 2019.

The articles, it's true, do not discuss any of the County's actions after their publication in the first half of 2014.  But neither of the County's actions changed or expanded the scheme.  Smith's complaint and the news articles center on the same issue: the lack

of competition between the fixed-base operators.  And they both allege the same violation of the Act: that Destin Jet's acquisition of Regal Air caused the County to violate its assurance to the FAA that a single fixed-base operator would "not be given an exclusive right to use the airport."  49 U.S.C. § 47107(a)(4).  Because there is "significant overlap" between the allegations in the complaint and the allegations in the news articles, this prong of the public disclosure bar is satisfied.  *Jacobs*, 113 F.4th at 1302 (quotation omitted).

The final inquiry is whether Smith is an original source of the information, either because he already told the government about it or because his knowledge is "independent of and materially adds to the publicly disclosed allegations."  31 U.S.C. § 3730(e)(4)(B).  For that latter point, if "the public disclosures are already sufficient to give rise to an inference of fraud, cumulative allegations do not materially add to the public disclosures."  *Jacobs*, 113 F.4th at 1303 (quotation omitted).  The same goes for "[b]ackground information and details that help one understand or contextualize a public disclosure"—those too are "insufficient to grant original source status."  *Id.* (alterations adopted and quotation omitted).

Smith does not claim that he disclosed any information to the government before the news articles were published, but he argues that he still qualifies as an original source because several of his allegations materially add to the public disclosures.  To start, he says he revealed that Odom engaged in a strawman scheme to

"covertly" gain control of Regal Air before Sterling Diversified officially acquired it. He adds that "actual economic conditions at [the airport] did not justify a merger" of Regal Air and Destin Jet and says he was "denied an opportunity to lease or develop a new" operation at the airport, "which is a separate violation of grant assurances."

These are details, not material additions. The articles established that one entity controlled both fixed-base operators at the airport and that this was a violation of the County's FAA grant assurances. Smith's new filings provide background information and additional details—but that's it. Allegations like the ones here are not material additions because they "merely supplement and contextualize the core fraud hypothesis" already disclosed. *Id.* The heart of Smith's complaint and the articles is the same: the consolidation of Destin Jet and Regal Air gave the merged entity an "exclusive right to use the airport" in violation of the County's grant assurances. 49 U.S.C. § 47107(a)(4).

Because the allegations disclosed in the articles significantly overlap with Smith's allegations and he is not an original source of the information, we conclude that his claims cannot clear the False Claims Act's public disclosure bar. We affirm the district court's order dismissing the amended complaint.[2]

---

[2] The district court also dismissed the suit for failure to satisfy Federal Rule of Civil Procedure 9(b). But because we affirm the dismissal on public disclosure grounds, we need not consider the 9(b) question.

**IV.**

Smith also challenges the district court's denial of his request for leave to amend his complaint.  Leave to amend is freely given "when justice so requires," but a court may deny leave "if amendment would be futile."  Fed. R. Civ. P. 15(a)(2); *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020).  "A district court may find futility if a prerequisite to relief is belied by the facts alleged in the complaint."  *Hernandez*, 982 F.3d at 1332 (alteration adopted and quotation omitted).

Smith argues that, if given leave to amend, he can allege "additional facts that demonstrate he is an original source" including "additional detail regarding how he learned of the allegations."  That is not enough.  An original source, as we have said, has "knowledge that is independent of *and* materially adds to the publicly disclosed allegations or transactions."  31 U.S.C. § 3730(e)(4)(B) (emphasis added).   While Smith's proposed amendment may help establish that his knowledge is independent of the public disclosures, even he does not suggest that it would also show that his knowledge "materially adds" to what is already publicly available.  And because this requirement is essential, Smith's proposed amendment is futile.

⋆    ⋆    ⋆

We **AFFIRM** the district court's order.