972 So.2d 226 (2007)
The STATE of Florida, Petitioner,
v.
Sylvia ALZATE and Carlos Gonzalez, Respondents.
No. 3D07-2631.
District Court of Appeal of Florida, Third District.
December 19, 2007.
Katherine Fernandez Rundle, State Attorney, and Penny H. Brill, Assistant State Attorney, for petitioner.
Richard Baron; Lonnie Richardson, for respondents.
Before COPE, ROTHENBERG, and SALTER, JJ.
ROTHENBERG, Judge.
The State of Florida ("the State") presented a legally sufficient motion to disqualify the trial judge, and accordingly, we grant the petition for writ of prohibition.
*227 Sylvia Alzate and Carlos Gonzalez (collectively, "the defendants") were charged with extortion in December 2006.[1] The alleged victim is Alejandro Sanchez Pizarro ("Pizarro"), a professional musician. Originally, Pizarro was included on the State's witness list, and the State Attorney's Office was accepting service of process on his behalf. On May 31, 2007, however, Pizarro's name was removed from the State's witness list and the State ceased accepting process for Pizarro.
In June 2007, the defendants attempted to subpoena Pizarro for deposition. When they attempted to serve Pizarro through the State Attorney's Office, they learned that, because Pizarro had been removed from the witness list, the State Attorney's Office was no longer accepting service for Pizarro. The defendants, therefore, attempted to serve Pizarro at his Miami Beach residence, where the documents were presented to a live-in maid. When Pizarro failed to appear for the scheduled deposition, the defendants filed a motion for a rule to show cause against Pizarro, alleging that Pizarro had been properly served and had failed to comply.
The motion was set for hearing on August 30, 2007, and although Pizarro was personally represented by Florida counsel, Pizarro's counsel was not informed of the hearing. During the hearing, Pizarro's attorney in Spain appeared and subsequently represented that Pizarro was not in the country when service was attempted on a maid at his Florida residence. Because the defendants wished to call an additional witness, the proceedings were continued to the following day, August 31, 2007. On that day, an unrecorded sidebar conference was conducted. After the conference, the defendants' counsel asked the trial court to take the rule to show cause off the calendar and indicated that Pizarro's counsel would provide some dates for Pizarro's deposition.
During the next month, Pizarro's counsel and the defendants' counsel attempted to set a date for Pizarro's deposition. The parties eventually agreed on a date, but when Pizarro's counsel learned that the defendants intended to videotape the deposition, he objected to voluntarily providing Pizarro for a videotaped deposition. Because Pizarro's counsel objected to providing Pizarro for a videotaped deposition, the defendants filed a motion to compel Pizarro's attendance for a videotaped deposition. That motion was set for hearing before the trial court on October 3, 2007. At the hearing, Pizarro's counsel addressed the trial judge in an effort to explain his resistance to the videotaping of Pizarro's deposition, and the following exchanges took place:
[PIZARRO'S COUNSEL]: Your Honor, If I
THE COURT: "[L]et me just tell you something before we get started. This is not a civil case. This is a criminal case. Over here in criminal court people come to their deposition or they go to jail. We don't play games and have sideshows like they do over at 73 West Flagler about depositions and who and when and at what time, what conditions and what I'm going to wear, what you are going to wear, and it is "Excuse me, don't excuse me."
We don't do that over here. He is going to show up. We are not playing games.
[PIZARRO'S COUNSEL]: Nobody is playing games here.
THE COURT: It looks like it to me.

*228 . . . .
[PIZARRO'S COUNSEL]: Well, your honor, fundamentally here the victim has not been properly served, and if the court wants to go into that I am perfectly willing to do that.
THE COURT: Well . . . you are the one that didn't want to proceed with the rule to show cause, I believe when we were here the last time. You had a big problem with that. So we tabled that because of your agreement to make this gentleman available.
Now we are back here in the same situation we were in the last time except a few more games and maybe a few more hours have been billed to these people.
. . . .
[PIZARRO'S COUNSEL]: Also, your Honor, I am going to file a declaration regarding the service of process to establish that the victim here has not be [sic] properly served and without proper service the court cannot compel him to appear for deposition.
THE COURT: Well, I am compelling him to appear.
[PIZARRO'S COUNSEL]: Your Honor, may I just
THE COURT: If you want to continue to play games then you are going to spend a lot of time together.
. . . .
[PIZARRO'S COUNSEL]: Your Honor, we are agreeing to have the deposition. We offered that, but there were certain conditions that
THE COURT: You are notyou don't have the right to dictate the conditions, just like you attempted last time to dictate where the deposition was going to be held. There are three places it can be held, that's it.
You are not going to put it in your office, you are not going to take it downtown. It is the State Attorney, the PD or the court, that's it.
[PIZARRO'S COUNSEL]: I agreed to do it at the State Attorney's Office.
THE COURT: Of course, after I advised you that you didn't have the right to even dictate the location, as you attempted to do. I don't know what it is about this case.
[PIZARRO'S COUNSEL]: I don't recall.
THE COURT: Oh, I do. I am sure if we order a transcript it will be real clear because I remember that very specifically, but I don't know what the game is with this case. I don't know what the deal is with this guy.
I have never seen a case where you have an alleged victim of an alleged crime who doesn't want to show up and testify to take his deposition, who hires a lawyer to play games to avoid a deposition. It is absurd.
(Emphasis added).
The trial judge granted the defendants' motion to compel Pizarro's videotaped deposition. Thereafter, the State filed a motion to disqualify the trial judge, arguing that the hostile comments directed by the trial judge at Pizarro's counsel established a well-founded fear that the State would not receive a fair trial. The trial judge denied the motion as legally insufficient, and this petition followed.
The test for determining the legal sufficiency of a motion to disqualify is whether the motion shows "a well-grounded fear that the movant will not receive a fair trial at the hands of the judge." MacKenzie v. Super Kids Bargain Store, Inc., 565 So.2d 1332, 1334 (Fla.1990). "A determination must be made as to whether the facts alleged would place a reasonably prudent *229 person in fear of not receiving a fair and impartial trial." Livingston v. State, 441 So.2d 1083, 1087 (Fla.1983). Furthermore, "[i]t is not a question of how the judge feels; it is a question of what feeling resides in the affiant's mind and the basis for such feeling." Id. at 1086 (quoting State ex rel. Brown v. Dewell, 131 Fla. 566, 179 So. 695, 697-98 (1938)). The facts disclosed in the record before this Court establish the legal sufficiency of the State's motion, and therefore, we grant the petition for writ of prohibition.
At the October 3, 2007, hearing on the defendants' motion to compel, before Pizarro's counsel was able to make a substantive statement on the record, the trial judge accused him of playing games and admonished him about the stricter procedural standards involved in criminal court. The trial judge then suggested that Pizarro's counsel was deliberately delaying the proceedings to accrue greater hourly fees. The trial court went on to threaten Pizarro and his counsel with jail time should Pizarro's counsel continue to "play games," or in other words, make his arguments in opposition to the motion at issue before the trial judge.
It is critical to note that in the midst of the trial judge's diatribe, Pizarro's meritorious arguments were largely ignored. Pizarro's counsel did not refuse to produce his client for deposition, instead, he objected to the defendants' request to videotape the deposition, though that objection was never specifically addressed. Due to the trial judge's anger, she failed to consider or to resolve the issue of whether Pizarro's agreement to appear for a deposition on a mutually acceptable date, without being properly served, was a waiver of his right not to appear without being properly served, if the terms under which he agreed to voluntarily appear, were altered. Pizarro's counsel explained that when he agreed to voluntarily produce his client for a deposition, the defendants' counsel did not seek to videotape the deposition. It was only after the defendants' counsel altered the terms that he objected to producing his client. The privacy and harassment issues raised by the potentially unnecessary videotaping of Pizarro were similarly cast aside. While the actual legal resolution of these issues is now irrelevant, because this Court denied the request for a stay and the deposition was taken pursuant to the trial court's order, the aftertaste of the proceedings lingers, as does the fear by the State and Pizarro that they will not receive a fair trial.
Pizarro is the alleged victim of the charged offenses. The speed with which the trial court not only dismissed Pizarro's arguments, but also attacked his character and that of his counsel, threatening them with imprisonment, would justifiably place a reasonably prudent person in fear of not receiving a fair and impartial trial. If the trial judge considers the alleged victim to be a game-player whose actions are absurd, then the State, by proceeding with its prosecution before this judge, runs the risk that the trial court's rulings might be influenced by these expressed impressions.
While each of these facts, standing alone, would likely not demand recusal or disqualification of the trial judge, in light of all the relevant circumstances, we are unable to say that the State's fear of bias in the coming proceedings is unreasonable. The State has demonstrated a well-founded fear that its entitlement to the "cold neutrality of an impartial judge," State ex rel. Davis v. Parks, 141 Fla. 516, 194 So. 613, 615 (1939), has been compromised.
Petition granted.
NOTES
[1] Originally, Gonzalez was also charged with two counts of grand theft. However, the petitioner filed a written nolle prosse of the grand theft counts on May 31, 2007.