# Third District Court of Appeal
## State of Florida

Opinion filed April 26, 2017.
Not final until disposition of timely filed motion for rehearing.

————————

Nos. 3D17-281, 3D17-158, 3D17-159
Lower Tribunal Nos. 16-25725, 16-25670, 16-25669, 16-23856

————————

**The State of Florida,**
Petitioner,

vs.

**Ambrose Dixon and Johan Matienzo,**
Respondents.


Cases of Original Jurisdiction – Prohibition, Certiorari, Mandamus.

Pamela Jo Bondi, Attorney General, and Gabrielle Raemy Charest-Turken, Assistant Attorney General, for petitioner.

Carlos J. Martinez, Public Defender, and Jeffrey Paul DeSousa, Assistant Public Defender, for respondents.


Before ROTHENBERG, FERNANDEZ, and SCALES, JJ.

ROTHENBERG, J.

In these consolidated cases, the State of Florida has filed petitions seeking

writs of prohibition, certiorari and mandamus. All three appellate cases arise from the trial judge's stated policy requiring the State to file an information by the twenty-first day after the arrest of the defendant or face a *sua sponte* release of the defendant or a reduction of the defendant's bond.

It has long been held in the courts of this state that "every litigant is entitled to nothing less than the cold neutrality of an impartial judge." State ex rel. Davis v. Parks, 194 So. 613, 615 (Fla. 1939). Because the trial judge's on-the-record comments reflect a predisposition to release defendants from custody either on their own recognizance ("ROR") or on a de minimis release condition, such as a $1 bond, if the State fails to file charges on the twenty-first day after arrest, we conclude that the trial judge erred by denying the State of Florida's ("the State") legally sufficient motion to disqualify the trial judge in State v. Dixon, which was filed on the twenty-first day after Dixon's arrest and where the State was unprepared to file formal charges. We, therefore, grant the State's petition for writ of prohibition in State v. Dixon filed under appellate case number 3D17-281. Based on the discussion which follows, we also grant the State's petition for certiorari relief in State v. Matienzo, filed under appellate case number 3D17-158, but deny the State's petition for writ of prohibition in State v. Matienzo, filed under appellate case number 3D17-159.

**State v. Ambrose Dixon, Appellate Case Number 3D17-281**.

The defendant, Ambrose Dixon ("Dixon"), was arrested for numerous offenses in three separate cases, allegedly committed on three separate dates. In case number F16-25669, Dixon was charged with making written threats to kill or do bodily harm (a second degree felony) and making threatening or harassing phone calls (a first degree misdemeanor) on July 18, 2016. In case number F16-25725, he was charged with committing these same offenses on November 30, 2016. Lastly, in case number F16-25670, Dixon was charged with committing a strong arm robbery (a second degree felony) and grand theft (a third degree felony) on December 26, 2016. At his first appearance, a finding of probable cause was made, and at the bond hearing, Dixon was given bonds totaling $28,500 as to all three cases, with an additional condition of house arrest.

The Assistant State Attorney that was handling Dixon's cases: (1) was not able to complete his investigation prior to the scheduled arraignment on January 17, 2017, which was the twenty-first day after Dixon was arrested; (2) intended to ask the trial judge, the Honorable Alberto Milian ("the trial judge"), to reset the arraignment for the thirtieth day as authorized by rule 3.134, Florida Rules of Criminal Procedure (2016); and (3) was aware of the trial judge's policy of releasing defendants *sua sponte*, either ROR or on a $1 bond without considering any other factors when formal charges are not filed by the twenty-first day after arrest. Accordingly, the Assistant State Attorney filed a motion to disqualify the

trial judge prior to his announcement at the arraignment and requested a reset of the arraignment to the thirtieth day. Accompanying the motion to disqualify was a sworn affidavit signed by the Assistant State Attorney and transcripts of the relevant proceedings in State v. Matienzo (case number F16-23856), over which the trial judge presided.

## A. Grounds For Disqualification

As grounds for disqualification, the Assistant State Attorney identified Dixon's pending charges and current bond status and stated that the State was not going to be able to complete its investigation prior to the twenty-first day (January 17, 2017), and thus, it was going to request the trial judge to reset the arraignment for the thirtieth day. The motion also stated that the Assistant State Attorney had a well-founded fear that the trial judge would not be fair and impartial to the State when ruling on motions regarding Dixon's bond or at trial, if the case proceeded to trial, because the Assistant State Attorney was aware of the trial judge's tone and statements made in State v. Matienzo, which he argued demonstrate: (1) a predisposition to release defendants ROR or on a very low bond in every case in which the trial judge believes the charging document was not timely filed, with or without a motion by defense counsel; (2) a predisposition for assisting defendants by *sua sponte* granting bonds and suggesting courses of action to defense counsel; and (3) hostility towards the State Attorney's Office because the trial judge

4

perceives the office as having a "lackadaisical bureaucratic attitude" towards the timely filing of charges.

**B. State v. Matienzo (Case Number F16-23856), Which Was Relied On By the State in State v. Dixon**

In support of his allegation regarding the trial judge's predisposition to apply such a policy, the Assistant State Attorney in State v. Dixon relied on the record in State v. Matienzo, case number F16-23856. This record reflects that when case number F16-23856 was called up for arraignment on December 20, 2016, the twenty-first day after Matienzo's arrest, Matienzo had three other felony cases pending before the trial court: (1) case number F16-14443, in which Matienzo was charged with strong arm robbery; (2) case number F16-23864, wherein Matienzo had been arrested for first degree grand theft and the arraignment had been reset for December 29, 2016, the thirtieth day; and (3) case number F16-23919, which was set for arraignment the following day. The case that was set for arraignment on December 20, 2016, case number F16-23856, was for an armed home invasion robbery with a firearm, a first degree felony punishable by life imprisonment, and two counts of aggravated battery with a firearm, second degree felonies punishable by fifteen years imprisonment with three-year minimum mandatories. Thus, Matienzo was being held without bond on that case.

As outlined in the motion to disqualify, when case number F16-23856 was called up for arraignment on the morning of December 20, 2016, the Assistant

5

State Attorney assigned to prosecute the case informed the trial judge that he had just finished the pre-file meetings with the witnesses and therefore he needed an extra day to generate the paperwork in order to file the charges in that case, and asked the trial judge to reset the arraignment for the following day where Matienzo was scheduled for arraignment on another case (case number F16-23919). The trial judge refused to reset the arraignment for the following day. Then, with no notice to the State, motion by defense counsel, or consideration of any of the factors that the court is required to consider when determining whether to release a defendant on bail or other conditions, see § 903.046, Fla. Stat. (2016), the trial judge *sua sponte* ordered that Matienzo be released ROR[1] because the State had not filed an information when the case was called for arraignment on the twenty-first day.

Also *sua sponte* and with no notice to the State or motion by defense counsel, the trial judge changed the bond which had been previously set in case number F16-23864, and which had already been reset to the thirtieth day for arraignment, to ROR, which he later modified to a $1 bond. The Assistant State Attorney objected to the rulings in both cases and explained that Matienzo was going to be charged with a felony punishable by life, a non-bondable offense, in

---

[1] Although the trial judge initially released Matienzo ROR on case number F16-23856, which included a non-bondable offense, he later, also *sua sponte*, changed the ROR designation to a $1 bond to allow Matienzo to receive credit for the time he remained in custody until the bond of $1 was posted.

6

case number F16-23856, Matienzo had violated his pre-trial release in case number F16-14443, Matienzo posed a danger to the community, and firearms were involved in almost all of Matienzo's cases. The Assistant State Attorney also asked if the trial judge would reconsider his rulings if the State filed the information in case number F16-23864 within thirty minutes. The trial judge responded that he would not reconsider his rulings even if the State filed the charges in thirty minutes (and still on the twenty-first day):

> THE COURT: I will not reconsider. I have made my position abundantly clear, as I have told the State on repeated occasions in numerous courtrooms, there is a duty and an obligation to act expeditiously. And the failure of the government to act is going to have some consequences. So the bond will be set at $1.00 on both of those cases.

As promised, later that morning and still on the twenty-first day, the State filed formal charges against Matienzo in case number F16-23856, charging him with armed robbery with a firearm, a non-bondable first degree felony punishable by life, and two counts of aggravated battery with a firearm, second degree felonies punishable by fifteen years imprisonment, and an additional charge of possession of a firearm by a delinquent. Based on the filing of formal charges, the Assistant State Attorney asked the trial judge to reconsider Matienzo's bond status because the information had been filed on the twenty-first day. The trial judge denied the request stating: "When I called up the case an hour and a half ago it was not filed, so your request is hereby denied."

7

When Matienzo's cases were before the trial judge the following day, December 21, 2016, for arraignment on another case, the Assistant State Attorney again asked the trial judge to reconsider his ruling on Matienzo's bond in case number F16-23856. The trial judge remained steadfast and denied the motion stating:

> I put you on notice when you came into this division. You have an obligation, and I have an obligation. If you do not file the charges on a timely basis, it is on you. And there is no reason you could not have filed it yesterday. Ultimately, you filed it within an hour. Proper planning prevents poor performance. You have an obligation. You comply with that obligation. . . .
>
> Now, I have told the division repeatedly. And I have told the defendants and I have told the public defenders and I have told the private bar that I am not going to put off somebody's liberty, so that the State can come in on the 33rd day and say, we are filing a resisting without violence. And somebody is sitting incarcerated. Since I am not a prophet, and I do not have the obligation of filing the charges, I really am going to hold your feet to the fire. That has been my position. Do not interrupt me. You did that yesterday. Do not interrupt me and do not argue with me. Your request is denied.

When the Assistant State Attorney attempted to inquire about the bond that the trial judge had *sua sponte* reduced to $1 in case number F16-14443 and explain why he was approximately one hour late with filing the charges in case number F16-23856, the trial court refused to entertain either the prosecutor's question or explanation, stating: "I am not here to do a question and answer on your cases," and "I do not require an explanation."

On January 6, 2016, the Assistant State Attorney made one last attempt to

explain the cause of the slight delay in the filing of the charges in case number F16-23856 and to apprise the trial judge of why pre-trial detention on the non-bondable offense and the additional charges was important in this case. However, rather than considering the seriousness of the charges, the fact that the charges were filed on the twenty-first day and before the trial judge had completed that morning's call of the calendar, Matienzo's dangerousness to the community, and the fact that the charged crimes allegedly occurred while Matienzo was on pre-trial release on other serious charged offenses, the trial judge continued to adhere to his stated policy of releasing defendants when the State fails to file the charges by what the trial judge has determined is timely. And then, on January 21, 2016, without listening to the Assistant State Attorney's explanation, the trial judge accused the Assistant State Attorney and the State in general of "negligence," "dereliction" "or plain out bureaucratic laziness."

> THE COURT: If all of those factors that you cite in your motion were true you, your office, the police agencies, had an obligation to file those charges in accord with the law. You chose not to. I don't know if there was negligence, or dereliction, or plain out bureaucratic laziness. I gave the gentleman a $1 bond because of the failure of the government to adhere to its responsibilities to file the charges.
> If all of those factors are true, and they should be considered by a judge, whether it's me or anybody else, then your office and you should have moved to file those appropriate charges in the appropriate time. Just because a man is sitting in jail accused of a heinous crime does not give us the luxury of bureaucratic neglect and largess of somebody else's freedom. And the reason that I have made it a point in two years of stating my position that I as a gatekeeper of justice and

9

fairness will not sit idly by when a human being is incarcerated who is either poor or facing a serious charge where he is being held without a bond and wait [here for approximately one hour] for the government to make its decision . . . .

. . . .

Your motion is hereby denied. And I will stand by my ruling understanding everything that you have said, and even taking it at face value. I only wish whoever was responsible for filing those charges would have taken those factors in account. If Mr. Matienzo goes out – if he's a danger to the community like you claim the responsibility lies with you, not with me.

. . . .

That is my position. I have explained it. It will continue to be my position. Just as we have the exclusionary rule to assure that law enforcement abides by the constitution[,] in this case a bond was set because of the government's failure to act on a timely basis according to their responsibilities, and according to the law.

## C. **Legal Analysis: Motion to Disqualify**

The Florida Rules of Judicial Administration provide for the disqualification of a judge when "the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge." Fla. R. Jud. Admin. 2.330(d)(1). The legal sufficiency of a motion to disqualify depends on "whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial." Livingston v. State, 441 So. 2d 1083, 1087 (Fla. 1983); State v. Borrego, 105 So. 3d 616, 619 (Fla. 3d DCA 2013). The allegations of fact that are contained in the motion must be taken as true, Masten v. State, 159 So. 3d 996, 997 (Fla. 3d DCA 2015), and "the question of disqualification focuses not on what the judge intended, but rather how the

10

message is received and the basis of the feeling." Great Am. Ins. Co. of N.Y. v. 2000 Island Boulevard Condo. Ass'n, 153 So. 3d 384, 390 (Fla. 3d DCA 2014) (citing Livingston, 441 So. 2d at 1086).

We conclude that each of the grounds raised in the State's motion for disqualification are legally sufficient, requiring the trial judge's disqualification.

(1) *The trial judge's stated policy*

The trial judge announced his policy regarding the release of defendants if the charges are not filed on the twenty-first day after arrest. Specifically, the trial judge made the following statements: (1) "I have made my position abundantly clear, as I have told the State on repeated occasions in numerous courtrooms, there is a duty and an obligation to act expeditiously. And the failure of the government to act is going to have some consequences. So the bond will be set at $1 on both of those cases"; (2) "I gave the gentleman a $1 bond because of the failure of the government to adhere to its responsibilities to file the charges"; and (3) "That is my position. I have explained it. It will continue to be my position. Just as we have the exclusionary rule to assure that law enforcement abides by the constitution[,] in this case a bond was set because of the government's failure to act on a timely basis according to their responsibilities, and according to the law."

The trial judge's actions demonstrated that he was willing to adhere to this policy even when (1) a defendant had four pending felony cases and was out on

11

pre-trial release when he was arrested for an armed home invasion robbery (a non-bondable offense) and two counts of aggravated battery with a firearm; (2) the State filed the charges on the twenty-first day, albeit approximately one hour after the case was initially called up for arraignment; and (3) the Assistant State Attorney informed the trial judge that he had just completed the pre-filing process, and he would be prepared to file the information in thirty minutes if the trial judge would pass the case to allow him to complete the paperwork. The trial judge's strict adherence to his stated policy was also demonstrated in his unwillingness to entertain the Assistant State Attorney's explanation for the delay or to consider Matienzo's danger to the community, the likelihood that Matienzo would re-offend while out of custody, and the other relevant factors a court must consider when deciding to release a defendant from custody and determining the conditions of the release. Instead, the trial judge *sua sponte* released Matienzo, who was being held on a non-bondable offense, even after the charges had been filed on the twenty-first day and within one hour of the scheduled arraignment.

"[J]udicial comments revealing a determination to rule a particular way prior to hearing any evidence or argument have been found to be sufficient grounds for disqualification." Thompson v. State, 990 So. 2d 482, 490 (Fla. 2008). "A trial judge's announced intention before a scheduled hearing to make a specific ruling, regardless of any evidence or argument to the contrary, is the paradigm of judicial

12

bias and prejudice." Gonzalez v. Goldstein, 633 So. 2d 1183, 1184 (Fla. 4th DCA 1994).

Thus, a motion to disqualify a trial judge may rely on the judge's announcement of his policy in other cases in order to establish a well-founded fear that the judge will not be impartial in the case in which the motion to disqualify was filed. In Dunlevy v. State, 201 So. 3d 733, 736 (Fla. 4th DCA 2016), defense counsel quoted and relied on multiple statements by the trial judge in other cases and asserted that the facts and statements in those other cases demonstrated that the trial judge had a policy of sentencing indigent defendants who were unable to pay restitution more harshly than defendants who could pay restitution or who could pay restitution more quickly than a co-defendant. The Fourth District Court of Appeal concluded that, based on the allegations in the motion to disqualify, Dunlevy's fear of bias against him because he could not pay restitution was reasonable, and thus the motion to disqualify should have been granted. Id. at 736.

Similarly, in Martin v. State, 804 So. 2d 360 (Fla. 4th DCA 2001), the motion to disqualify the trial judge was based on the allegation that the trial judge had a policy of ordering that any jail or prison sentence be followed by a period of probation, which reflected the trial judge's failure to apply individualized sentencing criteria in determining the appropriate sentence to impose following a guilty or no contest plea or a guilty verdict. Id. at 362. This allegation was based

13

on statements the trial judge had allegedly made to a reporter. Because the trial judge's remarks to the reporter could have reasonably been interpreted as announcing a fixed intention to have probation invariably follow any jail or prison sentence that the judge would impose, the motion to disqualify the trial judge was found by the appellate court to be legally sufficient and should have been granted. Id. at 364; see also Torres v. State, 697 So. 2d 175, 177 (Fla. 4th DCA 1997) (concluding that the judge's announced policy that no probation violator would be sentenced to time served constituted legally sufficient grounds for disqualification because the policy personally affected Torres and placed him in fear that he would not receive a fair sentencing hearing); Hayes v. State, 686 So. 2d 694, 695 (Fla. 4th DCA 1996) (holding that disqualification of the trial judge was required based on the judge's comments to an assistant public defender representing another defendant that the judge would never sentence a defendant to time served on a violation of probation, and finding that although the statement was not specifically directed towards Hayes, the trial judge erred by denying Hayes' motion to disqualify).

As these examples reflect, a judge's announced policy or predisposition to rule in a particular manner is grounds for disqualification. Here, the trial judge's announced policy of releasing defendants either on ROR or on a de minimis bond of $1 if the State does not file charges by the twenty-first day following the arrest,

14

without consideration of the nature of the offense, the reason for the delay, the defendant's prior record, the risk to the community, and the likelihood that the defendant will appear for all scheduled court appearances, gave the State a well-founded fear that it would not receive fair and impartial treatment when it announced its unreadiness to file Dixon's charges on the twenty-first day.

This policy is also in violation of Florida's statutory law and criminal procedure rules. Florida Rule of Criminal Procedure 3.134 addresses the time parameters for the filing of formal charges after an arrest and provides as follows:

> The state shall file formal charges on defendants in custody by information, or indictment, or in the case of alleged misdemeanors by whatever documents constitute a formal charge, within 30 days from the date on which the defendants are arrested or from the date of the service of capiases upon them. If the defendants remain uncharged, the court on the 30th day and with notice to the state shall:
>
> (1) Order that the defendants automatically be released on their own recognizance on the 33rd day unless the state files formal charges by that date; or
>
> (2) If good cause is shown by the state, order that the defendants automatically be released on their own recognizance on the 40th day unless the state files formal charges by that date.
>
> In no event shall any defendants remain in custody beyond 40 days unless they have been formally charged with a crime.

Section 907.041(3)(a), Florida Statutes (2016), explains that, while there exists "a presumption in favor of release on nonmonetary conditions for any person who is granted pretrial release," the statute limits that presumption to persons not

15

charged with a dangerous crime.[2] However, if a person is arrested for a dangerous

crime, the Legislature has clearly expressed its intent that such persons be held on

pretrial detention or released on monetary conditions that will assure the presence

of the person at trial and other proceedings, protect the community, and assure the

integrity of the judicial process. See § 907.041(1), (3).

---

[2] Section 907.041(4)(a) defines a "dangerous crime" as including the following offenses:

1. Arson;
2. Aggravated assault;
3. Aggravated battery;
4. Illegal use of explosives;
5. Child abuse or aggravated child abuse;
6. Abuse of an elderly person or disabled adult, or aggravated abuse of an elderly person or disabled adult;
7. Aircraft piracy;
8. Kidnapping;
9. Homicide;
10. Manslaughter;
11. Sexual battery;
12. Robbery;
13. Carjacking;
14. Lewd, lascivious, or indecent assault or act upon or in presence of a child under the age of 16 years;
15. Sexual activity with a child, who is 12 years of age or older but less than 18 years of age, by or at solicitation of person in familial or custodial authority;
16. Burglary of a dwelling;
17. Stalking and aggravated stalking;
18. Act of domestic violence as defined in s. 741.28;
19. Home invasion robbery;
20. Act of terrorism as defined in s. 775.30;
21. Manufacturing any substance in violation of chapter 893; and
22. Attempting or conspiring to commit any such crime.

16

Section 903.046, Florida Statutes (2016), reiterates that "[t]he purpose of a bail determination in criminal proceedings is to ensure the appearance of the criminal defendant at subsequent proceedings and to protect the community against unreasonable danger from the criminal defendant." § 903.046(1). Further, section 903.046(2) provides: ("[W]hen determining whether to release a defendant on bail or other conditions, and what that bail or those conditions may be, the court shall consider:)

(a) The nature and circumstances of the offense charged.
(b) The weight of the evidence against the defendant.
(c) The defendant's family ties, length of residence in the community, employment history, financial resources, and mental condition.
(d) The defendant's past and present conduct, including any record of convictions, previous flight to avoid prosecution, or failure to appear at court proceedings. . . .
(e) The nature and probability of danger which the defendant's release poses to the community.
(f) The source of funds used to post bail or procure an appearance bond . . . .
(g) Whether the defendant is already on release pending resolution of another criminal proceeding or on probation, parole, or other release pending completion of a sentence.
(h) The street value of any drug or controlled substance connected to or involved in the criminal charge. . . .
(i) The nature and probability of intimidation and danger to victims.
(j) Whether there is probable cause to believe that the defendant committed a new crime while on pretrial release.
(k) Any other facts that the court considers relevant.
(l) Whether the crime charged is a violation of chapter 874 or alleged to be subject to enhanced punishment under chapter 874 or reclassification under s. 843.22. . . .
(m) Whether the defendant, other than a defendant whose only criminal charge is a misdemeanor offense under chapter 316, is

17

required to register as a sexual offender. . . or a sexual predator . . . .

Rule 3.131(d)(1), Florida Rules of Criminal Procedure, provides for the mechanism to apply for the modification of bail after bail was set or denied at the first appearance probable cause hearing. Rule 3.131(d)(1) provides that such application be made by motion. Subsection (d)(2) requires at least three hours' notice to the State if modification is being sought by the defendant, and at least three hours' notice to the defendant if modification is sought by the State.

The transcripts of the proceedings in State v. Matienzo, which served as the basis for and were attached to the motion to disqualify the trial judge in State v. Dixon, reflect that based on the trial judge's stated policy, the trial judge refused to comply with the law. Florida Rule of Criminal Procedure 3.134 only allows for automatic release for a defendant on the thirty-third day if formal charges have not been filed and after notice to the State on the thirtieth day that such release shall take place on the thirty-third day unless good cause can be shown by the State. Section 903.046 also requires that when considering whether to release a defendant on bail or other conditions, the court **shall** consider a lengthy statutory list of circumstances bearing on the weight of the evidence against the defendant, the risk to the community, and the likelihood of the defendant's future court appearances. And rule 3.131(d) only provides for the modification of an existing bail amount or no bail determination by motion of either the defendant or the State and with at

18

least three hours' notice.

However, the transcripts in State v. Matienzo reflect that, based on the trial judge's stated policy, with no motion by the defendant, no notice to the State, and on the twenty-first day following Matienzo's arrest in case number F16-23856, the trial judge released Matienzo on a reduced bail of $1. This ruling was also made despite the fact that the first appearance judge had ordered that Matienzo be held on no bond status in that case because Matienzo was arrested on the non-bondable offense of armed home invasion robbery; the State announced that it had completed its investigation and that the charges would be filed on the twenty-first day; the State filed the charges approximately one hour later; and the trial judge did not consider any of the factors the court is required to consider pursuant to section 903.046. As a further demonstration of the trial judge's adherence to his stated policy, he refused to reconsider his ruling after the State returned to the courtroom approximately one hour later to notify the trial judge that the charges, including the non-bondable offense, had been filed, or to consider the State's subsequently filed motion for modification of bail. Rather than considering the statutory factors for modification of bail either at the time the trial judge *sua sponte* modified the bail or upon the State's subsequent properly noticed motion for modification, the trial judge stated that if the factors stated in the motion were true, they should have been considered by the State and the State should have "file[d]

19

those appropriate charges in the appropriate time."

> Your motion is hereby denied. And I will stand by my ruling understanding everything that you have said, and even taking it at face value. I only wish whoever was responsible for filing those charges would have taken those factors in account. If Mr. Matienzo goes out – if he's a danger to the community like you claim the responsibility lies with you, not with me.
>
> . . . .
>
> That is my position. I have explained it. It will continue to be my position. Just as we have the exclusionary rule to assure that law enforcement abides by the constitution[,] in this case a bond was set because of the government's failure to act on a timely basis according to their responsibilities, and according to the law.

The State's motion to disqualify the trial judge in State v. Dixon, accompanied by a sworn affidavit by the Assistant State Attorney and the transcripts of the proceedings in State v. Matienzo, was thus a legally sufficient motion requiring disqualification. The allegations, supporting affidavit and transcripts would place a reasonably prudent person, which in this case is the Assistant State Attorney prosecuting the criminal cases against Dixon, in front of the same judge who presided in State v. Matienzo, in fear of not receiving a fair and impartial consideration of the defendant's bond status when the Assistant State Attorney was unprepared to file charges against Dixon on the twenty-first day. We therefore conclude that the trial court erred by denying the motion to disqualify.

(2) *The trial judge's predisposition for assisting defendants on bond issues*

Although we have already concluded that disqualification is required based on the trial judge's stated policy to release defendants ROR or on a $1 bond when

20

the State does not file charges against a defendant who is in custody on the twenty-first day, we briefly address the two remaining grounds asserted by the State for disqualification of the trial judge. The law in Florida is clear – a judge may not enter into the fray by giving "tips" or legal advice to either side. Chastine v. Broome, 629 So. 2d 293, 295 (Fla. 4th DCA 1993). "When a judge enters into the proceedings and becomes a participant or an advocate, a shadow is cast upon judicial neutrality." R.O. v. State, 46 So. 3d 124, 126 (Fla. 3d DCA 2010); see also Williams v. State, 160 So. 3d 541, 544 (Fla. 4th DCA 2015); J.F. v. State, 718 So. 2d 251, 252 (Fla. 4th DCA 1998). Thus, when a judge provides legal advice, that alone is sufficient to compel disqualification. Great Am. Ins. Co., 153 So. 3d at 388.

The transcripts filed with the motion to disqualify reflect that after ordering that Matienzo be released ROR, the trial judge directed the Assistant Public Defender to contact the Public Defender's Early Release Unit ("ERU") and to instruct the unit to be more proactive in filing motions before the trial judge to release defendants who are unable to post bond.

> THE COURT: I have been a little bit distressed to see some people held on what I consider minor charges, grand thefts and possession of cocaine charges that end up getting nolle prosed on the day of the arraignment, and for some reason it is not being brought to me. So please talk to your - -what do you call that unit. The.
>
> ASSISTANT PUBLIC DEFENDER: E-R-U.

THE COURT: ERU, early -- and tell them to put these cases down. I do not care if they put them down 24 hours' notice.

By directing the Assistant Public Defender to set more cases on the calendar to enable the trial judge to release more defendants from custody, the trial judge was offering advice or tips to the Public Defender's Office and abandoned his neutrality. In <u>Chastine</u>, 629 So. 2d at 295, the Fourth District disqualified a judge who passed a note to the prosecutor giving the attorney strategy tips. In <u>J.F.</u>, 718 So. 2d at 252, the Fourth District reversed J.F.'s conviction after the trial judge directed a State witness to obtain additional evidence and *sua sponte* continued a hearing pending the results of a fingerprint examination. In <u>Great American Insurance Co.</u>, 153 So. 3d at 388, this Court found that disqualification of the trial judge was required where he offered legal advice to the plaintiff by stating, "If it were me, I would still ask questions of an opinion nature and get the statements regarding privilege on the record." And in <u>Williams</u>, 160 So. 3d at 544, the appellate court found that it was reasonable for Williams to question the trial court's neutrality where the trial court prompted the State to move for reconsideration of a suppression order.

We see no reason to treat the trial judge's tips to the Public Defender's Office in this case any differently than the tips provided in other cases which required disqualification of the trial judge or a reversal of the judgment. "Trial judges must studiously avoid the appearance of favoring one party in a lawsuit, and

22

suggesting to counsel or a party how to proceed strategically constitutes a breach of this principle." Shore Mariner Condo. Ass'n v. Antonious, 722 So. 2d 247, 248 (Fla. 2d DCA 1998).

(3) *Comments demonstrating hostility and/or bias against the State*

The trial judge accused the State of having a "lackadaisical bureaucratic attitude" and of "negligence, or dereliction, or plain out bureaucratic laziness" for not filing charges on the twenty-first day. He further added that the seriousness of the charges did not support the "luxury of bureaucratic neglect and largess of somebody else's freedom." The trial judge levied these accusations while at the same time precluding the Assistant State Attorney from explaining what caused the delay, and despite the fact that the Assistant State Attorney had completed his pre-filing investigation that morning, and he had filed the charges one hour later on the twenty-first day. Specifically, when the Assistant State Attorney attempted to provide an explanation when the case was called up for arraignment on the twenty-first day, the trial judge refused to listen and told him, "Do not interrupt me again. I will listen to you whenever I ask you to speak." The trial judge admonished the Assistant State Attorney again on the following day after the charges were filed and when the Assistant State Attorney attempted to provide an explanation, the trial judge stated: "Do not interrupt me. You did that yesterday. Do not interrupt me and do not argue with me. Your request is denied."

23

The trial judge also inferred that the State's "laziness," "lackadaisical bureaucratic attitude," "negligence or dereliction" results in defendants needlessly sitting in custody and stated that he would not "rubber stamp having somebody in custody without the law being obeyed," thus implying that the law requires the filing of formal charges by the twenty-first day, which it does not, and that the State is violating the law when it fails to file charges on the twenty-first day and requests a reset until the thirtieth day, which it is legally entitled to request. These accusations and negative comments directed at the Assistant State Attorney and the State in general requires disqualification. See State v. Alzate, 972 So. 2d 226, 229 (Fla. 3d DCA 2007) (requiring disqualification where the trial judge accused the victim's counsel of "playing games" and accused him of deliberately delaying the proceedings to accrue larger hourly fees); Valdes-Fauli v. Valdes-Fauli, 903 So. 2d 214, 217 (Fla. 3d DCA 2005) (holding that the trial judge's words and actions reasonably gave the wife a legitimate fear that she would not receive a fair and impartial trial, thus warranting disqualification); Royal Caribbean Cruises, Ltd. v. Doe, 767 So. 2d 626, 627 (Fla. 3d DCA 2000) (holding that disqualification was required where the judge's remarks suggested that she had preexisting unfavorable opinions about the management and litigation tactics of the cruise line industry).

**State v. Matienzo, Appellate Case Numbers 3D17-158 and 3D17-159**

In appellate case number 3D17-158, the State seeks a writ of certiorari

24

quashing the trial judge's order rendered on January 9, 2017, denying pre-trial detention of the defendant, Matienzo, based on the trial judge's stated policy of releasing defendants as previously discussed in this opinion. Additionally, the State seeks a writ of mandamus to require the trial judge to afford the State with a hearing on its motion for pretrial detention and for consideration of the factors provided in section 907.041, Florida Statutes.[3]

In appellate case number 3D17-159, the State seeks a writ of prohibition prohibiting the trial judge from imposing his stated policy of releasing defendants ROR or on de minimis conditions, such as a $1 bond, when the State does not file charges by the time the case is called for arraignment on the twenty-first day after arrest.

Based on our decision in <u>State v. Dixon</u>, we grant the petition for writ of certiorari, quash the January 9, 2017 order denying pre-trial detention, and remand for reassignment of Matienzo's cases to another judge. Because we are confident that upon the trial judge's consideration of this opinion, the trial judge will comply with sections 903.046, and 907.041, and rules 3.131 and 3.134, we deny the petition seeking a writ to prohibit the trial judge from imposing his previously stated policy in future cases.

## **CONCLUSION**

---

[3] Based on our ruling on the petition for writ of prohibition, we decline to address the petition for writ of mandamus as it is moot.

25

## A. State v. Dixon, Appellate Case Number 3D17-281

Because the allegations and transcripts attached to the motion to disqualify the trial judge would place a reasonably prudent person, which in this case is the Assistant State Attorney who filed the motion to disqualify, in fear of not receiving a fair and impartial hearing before the trial judge, disqualification was required. We, therefore, grant the petition for writ of prohibition in State v. Dixon, appellate case number 3D17-281, and remand for the assignment of a new judge to hear all proceedings against Dixon. Because we conclude that the trial judge should have granted the motion to disqualify, his subsequent rulings were without authority and are hereby vacated. See State v. Borrego, 105 So. 3d 616, 621 (Fla. 3d DCA 2013); Coba v. Pepper, 779 So. 2d 599, 600 (Fla. 3d DCA 2001).

## B. State v. Matienzo, Appellate Case Numbers 3D17-158 and 3D17-159

We grant the petition for writ of certiorari filed in appellate case number 3D17-158, quash the January 9, 2017 order under review, and remand for reassignment of Matienzo's cases to another judge and for consideration of the State's motion for pre-trial detention. We deny the petition for writ of prohibition filed in appellate case number 3D17-159 for the reasons previously stated in this opinion.

Petition for writ of prohibition, case number 3D17-281 granted; petition for writ of certiorari in case number 3D17-158 granted and remanded with

26

instructions; petition for writ of prohibition in case number 3D17-159 is denied.

This opinion shall take effect immediately notwithstanding the filing or disposition of any motion for rehearing.