# Third District Court of Appeal

## State of Florida

Opinion filed December 17, 2014.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D14-2625
Lower Tribunal No. 14-8506

————————————

## Great American Insurance Company of New York,
Petitioner,

vs.

## 2000 Island Boulevard Condominium Association, Inc., et al.,
Respondents.


A Case of Original Jurisdiction – Prohibition

Carlton Fields Jordan Burt and Wendy F. Lumish; Mound Cotton Wollan & Greengrass, and Ira S. Bergman and Jason M. Chodos (Fort Lauderdale), for petitioner.

Bambi G. Blum; Mintz Truppman and Mark J. Mintz; McLuskey & McDonald and John W. McLuskey, for respondents.


Before SHEPHERD, C.J., and SALTER and LAGOA, JJ.

SHEPHERD, C.J.

It has long been said in the courts of this state that "every litigant is entitled to nothing less than the cold neutrality of an impartial judge." State ex rel. Davis v. Parks, 194 So. 613, 615 (Fla. 1939). Regrettably, the trial judge in this case has abandoned his post as a neutral overseer of the dispute between the parties, compelling us to grant Great American Insurance Company's Petition for a Writ of Prohibition.[1]

This case arises out of an insurance coverage dispute between 2000 Island Boulevard Condominium Association, Inc. and Great American Insurance Company of New York over whether a "Difference in Conditions" insurance policy issued by Great American affords the Association coverage for falling concrete and slab deflection, alleged to have occurred in the condominium parking garage. The Association filed its complaint on April 1, 2014. The case was assigned to Miami-Dade Circuit Court Judge David C. Miller. On September 30, Great American filed its Answer and Affirmative Defenses. The affirmative defenses raised various exclusions and conditions contained in the insurance policy, including that Great American was unable to finalize its coverage position because the Association had failed to provide documents and refused to appear for an examination under oath. Operating on an "expedited" case management

---

[1] We review the trial court's order denying disqualification under a de novo standard of review. Wade v. Wade, 123 So. 3d 697 (Fla. 3d DCA 2013).

2

schedule, the trial court struck Great American's legal defenses three weeks later, on October 22, 2014, as "legally invalid." The remarks upon which Great American relies in support of disqualification were made at the October 22 hearing, and at a hearing held one week earlier, on October 15, on Great American's motion for a protective order to limit discovery of its pre-litigation, engineering consultant.

At the time of these hearings, no summary judgment motions had been filed, nor had a single witness ever appeared before the court. Indeed, at the time of the October 15 hearing, not a single deposition had been taken in the case. Yet, despite the complete lack of any evidence before the court, the following exchange took place between the court and Great American's counsel at the October 15 hearing:

> THE COURT: Well, it doesn't feel like we're in an abandonment situation. We've got a lawsuit filed. We've got an insurance company that's not paying a claim. We've got them basing that decision, in part, upon this expert that went out there, and I imagine he was maybe perhaps even involved in putting together the list of things they still needed. You said you would give them a report when they got all of that information to you. It strains all credulity for me to believe that your carrier has not denied coverage based on the information they know now.
>
> [DEFENSE COUNSEL]: But they have not.
>
> THE COURT: **Then fork over the money**.

(Emphasis added.) This startling remark, in and of itself, is sufficient to compel disqualification. Whether Great American is required to "fork over the money" is the entirety of what is at issue in this case. "While a trial judge may form mental impressions and opinions during the course of the case, the judge is not permitted to pre-judge the case." Kates v. Seidenman, 881 So. 2d 56, 58 (Fla. 4th DCA 2004); see also Minaya v. State, 118 So. 3d 926, 929 (Fla. 5th DCA 2013); State v. Ballard, 956 So. 2d 470 (Fla. 2d DCA 2007). We agree with Great American that this remark alone, made without the benefit of any affidavits, sworn testimony or other competent evidence, is sufficient to leave Great American with an objectively reasonable fear it will not receive a fair trial. See Williams v. Balch, 897 So. 2d 498 (Fla. 4th DCA 2005) (holding disqualification required when judicial comments signal predisposition made prior to consideration of evidence).

Additional remarks made by the trial judge at the October 15 hearing also compel disqualification. For example, an exchange took place after Great American's counsel stated that Great American did not have an opportunity to complete its investigation before the Association filed suit. Regardless of whether the court believed or disbelieved this statement, it had an obligation to remain impartial. Yet, bias was again displayed in the following exchange:

> THE COURT: You can't read the June 26, 2012 letter without saying this is a denial letter. **"We're not sure," you can "we're not sure" until the cows come home. And, in fact, you won't be sure until the jury speaks, and then you won't be sure until the**

4

**Appellate Court rules, and then you won't be sure until the Supreme Court rules after that. Then even if they rule against you, you won't be sure that they're right. You'll claim that they're wrong.** That's just the nature of litigation. That's how it works.

Listen, if it were -- **if I were being asked, I would sanction you** for making a specious argument that this person[2] shouldn't be deposed and opinions fully addressed. You've taken a position, you're involved in litigation, you've denied coverage, you've stated and specified things. **It's doggone concrete spalling, up or down. This is not rocket science. This is something that construction's been dealing with for many, many, many years. Ever since they put a piece of steel inside concrete they've been having these issues. It's not a big deal. . . .**

. . . .

THE COURT: And maybe it is for a lawyer, but I can tell you for an expert it's not. This guy was sent out as an expert. The claim was, for all intents and purposes, denied. Assurances were given once, we get all of these records we will give you his report. But now

---

[2] This "person" is Samuel Thomas, Great American's pre-litigation, engineering consultant. At issue in this hearing was, among other things, Great American's motion for protective order pertaining to Mr. Thomas' opinions, which Great American argued were protected work product. In pre-litigation communication, Great American advised the Association that its expert would produce a report and the report would be provided upon "receipt from the insured of information and documents requested from it by Great American." Great American asserts the filing of the instant law suit prematurely terminated its claims-handling obligations, including what it considered to be a conditional agreement to generate a report from its consultant. Great American's motion presented at least a colorable work product doctrine argument. See Fla. R. Civ. P. 1.280(b)(5)(B) ("A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only . . . upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.").

5

we know that **he was probably told don't do a report, because otherwise they do reports.**

So I would instruct that he prepare a report in anticipation of his deposition and that he answer all questions that he has -- you can't keep claiming you're going to hire new experts **to keep a claim alive and a claim from being paid.**

[DEFENSE COUNSEL]: Well, we're defending a lawsuit, and the experts are for a lawsuit.

(Emphasis added.)

In addition to the trial judge's palpable distrust of Great American's willingness to render a coverage determination, the court here goes a step further by expressing a contemptuous view of Great American (or its counsel's) willingness to accept judicial pronouncements. The Court casually states, "That's just the nature of litigation. That's how it works." A court of law should not be in the business of casting aspersions on the ability of a party or its counsel to accept the wisdom of this state's appellate courts and make unsubstantiated predictions of how that party will process those decisions.

The court's unsolicited legal advice to plaintiff's counsel is also problematic. This advice came in the form of the following statement: "Listen, **if it were – if I were being asked, I would sanction you** for making a specious argument that this person shouldn't be deposed and opinions fully addressed." (Emphasis added.) A trial judge crosses the line when he becomes an active participant in the adversarial process, i.e., gives "tips" to either side. See <u>Chastine v. Broome</u>, 629 So. 2d 293,

6

295 (Fla. 4th DCA 1993). The issue of sanctions was not before the court. Yet, the court essentially advised plaintiff that, should he request sanctions, the court would award them. The implication of the court's statement is clear – plaintiff's counsel should move for sanctions because the court will grant the motion.

The court then went further still in offering legal advice to the plaintiff by stating **"If it were me, I would still ask questions of an opinion nature and get the statements regarding privilege on the record."** Such legal advice, standing alone, is sufficient to compel disqualification. See, e.g., Blackpool Assocs., Ltd. v. SM-106, Ltd., 839 So. 2d 837, 838 (Fla. 4th DCA 2003) ("We grant relief in connection with the trial court's order that denied disqualification as the trial court provided Blackpool/Kevin Murphy with legal advice and suggestions."); Shore Mariner Condo. Ass'n v. Antonious, 722 So. 2d 247, 248 (Fla. 2d DCA 1998) ("Trial judges must studiously avoid the appearance of favoring one party in a lawsuit, and suggesting to counsel or a party how to proceed strategically constitutes a breach of this principle."); Leigh v. Smith, 503 So. 2d 989, 991 (Fla. 5th DCA 1987) ("Certainly an allegation that a judge assisted the opposing attorney in the trial of the case by 'signalling' is sufficient, by itself, to warrant disqualification.").

Next, we address the court's insinuation Great American owes coverage for the Association's claim and its assertion that Great American is **"keep[ing] ... [the]**

7

**claim from being paid"** by expert-shopping. (Emphasis added.) As noted above, the court stated at the October 15 hearing that "you can't keep claiming you're going to hire new experts to keep a claim alive and a claim from being paid." This statement is particularly problematic coming from a judge presiding over a coverage dispute. Rather than having an open mind concerning the possibility the claim, in fact, may not be covered by the policy, the court essentially has found the claim is covered and has accused Great American of hiring new experts to avoid paying it. Yet, at this stage of the litigation, the court had absolutely no factual basis for making any kind of coverage determination. In fact, as the court has acknowledged, Mr. Thomas, Great American's pre-litigation engineering consultant, never even issued a report. The court speculated, without the slightest evidentiary basis, that Great American told Mr. Thomas not to prepare a report, because "otherwise they do reports."

Finally, we address the court's statement, "**It's doggone concrete spalling, up or down. This is not rocket science. This is something that construction's been dealing with for many, many, many years. Ever since they put a piece of steel inside concrete they've been having these issues. It's not a big deal. . . .**" (Emphasis added.) Again, without any record evidence before it, the court gave its view of what the facts will show and how an expert will view those facts, namely that (a) the damage at issue is "concrete spalling"; (b) the construction industry has

been dealing with this issue for "many, many, many years"; and (c) construction experts will not find "concrete spalling" to be particularly complex. When a court transforms itself into one of the litigants, it creates a well-founded fear that a party will not be dealt with in a fair and impartial manner. See Chillingworth v. State, 846 So. 2d 674, 676 (Fla. 4th DCA 2003) ("The court's quest for information in this case crossed the line of neutrality."). So too has the trial judge crossed the line in this case. His remarks confirm the court has pre-judged the facts of this case. Under these circumstances, disqualification is warranted. See Minaya, 118 So. 3d at 929; Kates, 881 So. 2d at 58.[3]

At the October 22 hearing, the court continued improperly to make unsupported factual findings based upon a barren record. For example, the court made the following statements:

> THE COURT: We all know, don't we all know that the spalling is caused by moisture getting into the rebar and the rebar rusting and expanding and cracking the concrete off.
>
> [DEFENSE COUNSEL]: And if [plaintiff's counsel] is willing to stipulate to this-
>
> [THE COURT]: It's just like if you drop a ball out of a tree it's going to hit the ground.
> . . . .

---

[3]We acknowledge the court's statement in this regard ordinarily would not be sufficient to warrant disqualification. However, "legal sufficiency" is determined by analyzing the totality of the grounds asserted. See Zimmerman v. State, 114 So. 3d 1011, 1011 (Fla. 5th DCA 2012).

[DEFENSE COUNSEL]: Perhaps they know that this piece over here fell down two years ago and wouldn't be covered under this policy. There's also-

[THE COURT]: Then you may want to go back to the inspection when you guys said it was fine or somebody on your behalf.

[DEFENSE COUNSEL]: I'm sorry?

[THE COURT]: They talked about an inspection before the policy was written.

. . . .

[DEFENSE COUNSEL]: What we're saying is we don't know what the Plaintiff is claiming. There's the pool deck-

[THE COURT]: They're claiming everything, that's what they always do.

Regrettably, these statements, which sound more like they are coming from a party who is arguing the case rather than from a judge who has not taken a single piece of evidence, lend further credence to Great American's belief that this court has pre-judged the facts of this case, is injecting his personal opinions on causation into the case, and has a bias in favor of the plaintiff.

Finally, at the October 22 hearing, the court again took up the issue of whether a June 26, 2012, letter sent by Great American was (as Great American contends) a reservation of rights letter or (as plaintiff contends) a denial letter. On this issue, the court stated, "I think it's a denial. I mean, the absence of anything else - well, it's an unkept promise of a denial after explaining why it's not giving

coverage. How is that for fancy talk for we're not paying you. To me, it's the same thing, we're not giving you money." The "fancy talk" comment is yet another display of the court's animosity towards Great American or its counsel. But this comment reasonably also may be interpreted as something even more problematic   a suggestion that Great American was somehow being deceptive by using "fancy talk" to disguise a "denial letter" as a "reservation of rights letter."[4] The implication that Great American has been less than forthright with the Association by using "fancy talk" to obscure the meaning of its letter is further grounds for disqualification. See generally DeMetro v. Barad, 576 So. 2d 1353, 1355 (Fla. 3d DCA 1991) (stating disqualification is appropriate where there is "a clear implication that the judge will not believe the complaining party's testimony in the future").

We acknowledge some of the trial court's comments may have been intended as expressions of wit or erudition on his part. However, the question of disqualification focuses not on what the judge intended, but rather how the message is received and the basis of the feeling. See Livingston v. State, 441 So. 2d 1083, 1086 (Fla. 1983) ("[I]t is not a question of how the judge feels; it is a question of what feeling resides in the affiant's mind and the basis for such

_____

[4] The June 26 letter reads as a standard reservation of rights letter, citing potentially applicable policy defenses and exclusions, and requesting information (albeit considerable in length and breadth) for its use in making a coverage determination. The word "denial" appears nowhere in the letter.

feeling.") quoting State ex rel. Brown v. Dewell, 179 So. 695, 697-98 (Fla. 1938)).

In the words of the sixteenth century statesman and jurist, Sir Francis Bacon (1561-1626):

> Judges ought to be more learned than witty; more reverend (sic) than plausible; and more advised than confident. *** Patience and gravity of hearing is an essential part of justice; and an overspeaking judge is no well tuned cymbal.

"Of Judicature," Francis Bacon Essays, pub. by J. M. Dent & Sons, 1958, Essay LVI, pp. 162, 163.

Petition granted.