# Third District Court of Appeal

## State of Florida

Opinion filed June 14, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0712
Lower Tribunal No. 17-22854
_____

## Florida Power & Light Company,
Petitioner,

vs.

## Heydi Velez, et al.,
Respondents.

A Case of Original Jurisdiction – Prohibition.

Joseph Ianno, Jr., (Juno Beach); Heise Suarez Melville, P.A., and Luis E. Suarez, and Thomas S. Ward, Patricia Melville, Mark J. Heise, and Dorian N. Daggs; Boies Schiller Flexner, LLP, and Sashi C. Bach, Stuart H. Singer, and Pascual Oliu (Ft. Lauderdale); Squire Patton Boggs (US) LLP, and Digna B. French, and Alvin B. Davis, for petitioner.

Acosta Law Firm, and Julio C. Acosta; Armas Bertran Zincone, and J. Alfredo Armas, Eduardo E. Bertran, and Francesco A. Zincone; Dorta Law, and Gonzalo R. Dorta; MSP Recovery Law Firm, and Alexis Fernandez, and John H. Ruiz, for respondents.

Before EMAS, SCALES, and LINDSEY, JJ.

PER CURIAM.

Florida Power & Light Company ("FPL") petitions this Court for a Writ of Prohibition based on the trial court's denial of its Motion to Disqualify. Because FPL's Motion was legally sufficient, we grant the Petition.

## I. BACKGROUND

This is a class action against FPL arising out of power outages during and immediately after Hurricane Irma in 2017. At this stage in the litigation, the trial court has certified the class—though an appeal of the class certification order remains pending—and the parties are in the process of providing notice to the class.[1] On March 30, 2023, the trial court held a case management conference to determine what information was needed to notify potential class members of the pending class action. Following the hearing, the court ordered FPL to provide not only information to assist Plaintiffs in locating and giving notice to the class but also "the duration of outage experienced during the relevant time period following Hurricane Irma until such time as full power was declared by [FPL] to be restored."

A few days later, on April 5, the court held another case management conference on various pending motions, all of which were related to class

---

[1] The mandate has not been issued in the class certification appeal.

notice. During the hearing, the trial judge explained he had ordered FPL to disclose power outage duration because he was thinking about his own damages model:

> I think the other line items I can think of is not only who the people are, but this duration information. That was key information. I may have added that to the order, I'm not sure. So this didn't come from anybody, this came straight from me. That's important, because I'm already thinking of other damage models.

Neither FPL nor Plaintiffs had any motions pending related to damages, and it is undisputed that the only issue before the trial court was notice to the class. Despite this, the trial judge proceeded to reject the theory of damages Plaintiffs had set forth in their operative Complaint. According to the Complaint, Plaintiffs' action "does not seek a refund of charges nor does it challenge FPL's rates but, instead, exclusively seeks to recover consequential damages and any other damages awardable as a matter of law for the prolonged periods of power outages resulting from FPL's failure to fulfill its contractual obligation and gross negligence." These damages include but are not limited to "loss of perishable goods and food, lost profits, and incurred expenses . . . ."

Without any urging by the parties, the judge proposed his own damages model and weighed in on what evidence he thought would and would not be reliable:

> I'm thinking already, hey, you lost power for a certain number of hours, how much did you contribute to the fund for this protection, the hardening, what was the surcharge you paid, how much you lost, you get a pro rata amount of how much you paid against that fund, you get that back. It's a very mathematical, very simple thing.
>
> . . . .
>
> I don't know if we want to deal with people talking about what was in their refrigerator, you know, I had to throw out my fish sticks, and I want $3.95 for my fish sticks. We're not doing that. I can tell you now that's not going to happen, because we'll be doing this until the end of time, and quite frankly I wouldn't believe anybody as to what they claimed they had in their refrigerator anyway, so there's, that's not reliable.
>
> But what's reliable is they paid a certain amount to FP&L for hardening, that's a known number because they were billed for it, and we're going to do the best we can to find out how much time they lost, how much power, how much time in terms of duration of their energy loss. And you're going to have a problem with some people.

The judge went on to explain that he could foresee problems with Plaintiffs' consequential damages model based on a conversation he had with his neighbor about the pending class action:

4

Let me tell you, I spoke to a neighbor the other day, I said, by the way, there's a class action, and, you know, you're going to be part of a class, you'll get a notice of some kind, I don't know what's coming. He said, well, I have no idea, I have no idea how long I lost power, I was out of town. I hadn't even thought of that. A lot of people left town. There were a lot of people gone. I may have been the only person on my block at the time the storm hit. It was weird, everybody ran for the hills, and they were scared to death that a Category 5 was making a direct hit on Miami, right, and so they left. They don't know when their power --

So whatever Florida Power & Light's records are they are. Heck, every hurricane the lady across the street, right across the street, gets power right away because she's next to the school. There are people next to hospitals. They get power right away. Next door, you're on a different wire, you get it three weeks later. Whatever the records are the records are, and I think, and I'm throwing it out there because I've been thinking about it, look at what the Florida Power & Light's records are relating to duration of power loss, whatever you have, and you prorate it against the money that you spent towards this hardening, and you figure it out mathematically, and we're done with it by the end of the year.

The trial judge further compared the instant class action—in which liability and damages have yet to be determined—with a wholly unrelated tobacco case he presided over that involved distribution of a settlement fund:

We had to be very creative in the Engle Trust case, and it got -- we distributed, gosh, a half a billion dollars in about a year.

5

We took care of that trust fund. We got people paid before they died. If we had bothered with the claims administration process that the lawyers were talking about we'd still be doing it. It would be being done after I retire. Nobody could come up with a damage model that anyone could live with, and that's why we just said, okay, we're giving everybody the same amount.

Following the April 5 hearing, FPL moved to disqualify the trial judge based on the specific statements outlined above. In its motion, FPL argued that "[t]hese comments crossed the line from judicial neutrality to advocacy for one side" and "give rise to a reasonable fear" that the trial judge is not an impartial arbiter in this case. See Fla. R. Gen. Prac. & Jud. Admin. 2.330(e) ("A motion to disqualify shall set forth all specific and material facts upon which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances: (1) the party reasonably fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge . . . .").

The trial court denied FPL's Motion to Disqualify as legally insufficient. FPL's Petition for Writ of Prohibition followed.

## II.     ANALYSIS

It is well-established that a petition for writ of prohibition is the proper method for seeking immediate review of an order denying a motion for disqualification. See, e.g., Cisneros v. Guinand, 314 So. 3d 682, 683 (Fla.

6

3d DCA 2021). "The standard of review of a trial judge's determination on a motion to disqualify is de novo." Law Offices of Herssein & Herssein, P.A. v. United Servs. Auto. Ass'n, 271 So. 3d 889, 893 (Fla. 2018) (quoting Parker v. State, 3 So. 3d 974, 982 (Fla. 2009)).

It is undisputed that FPL's motion complies with the procedural requirements set forth in Rule 2.330. The only issue before us is whether the facts alleged are legally sufficient for disqualification. "The test for determining the legal sufficiency of a motion for disqualification is whether 'the facts alleged (which must be taken as true) would prompt a reasonably prudent person to fear that he could not get a fair and impartial trial.'" Bank of Am., N.A. v. Atkin, 303 So. 3d 583, 587 (Fla. 3d DCA 2018) (quoting Molina v. Perez, 187 So. 3d 909, 909 (Fla. 3d DCA 2016)). Our focus is "not on what the judge intended, but rather how the message is received and the basis of the feeling." Cisneros, 314 So. 3d at 683 (quoting Nguyen v. Nguyen, 229 So. 3d 407, 407 (Fla. 3d DCA 2017)); see also In re Guardianship of O.A.M., 124 So. 3d 1031, 1032 (Fla. 3d DCA 2013) ("In reviewing the allegations in a motion for disqualification, 'facts must be taken as true and must be viewed from the movant's perspective.'" (quoting Baez v. Koelemij, 960 So. 2d 918, 919 (Fla. 4th DCA 2007)).

FPL's Motion contains specific statements indicating the trial judge crossed the line from neutral arbiter to active participant in the adversarial process. See Atkin, 303 So. 3d at 587 ("'Trial judges must studiously avoid the appearance of favoring one party in a lawsuit, and suggesting to counsel or a party how to proceed strategically constitutes a breach of this principle.' Shore Mariner Condo. Ass'n v. Antonious, 722 So. 2d 247, 248 (Fla. 2d DCA 1998). 'A trial judge crosses the line when he becomes an active participant in the adversarial process, i.e., gives "tips" to either side.' Great Am. Ins. Co. v. 200 Island Blvd. Condo. Ass'n, Inc., 153 So. 3d 384, 388 (Fla. 3d DCA 2014)").

Although the only issues before the court had to do with giving notice to the class, the trial judge sua sponte ordered FPL to disclose information related to damages. Further, at the April 5 hearing, the judge, without being prompted by either side, drifted into an irrelevant discourse on damages in which he proposed his own damages model. This is particularly troubling given that liability, let alone damages, has yet to be determined.

Although the trial judge may have intended his comments to be helpful suggestions for a discussion of damages down the road, we do not evaluate the legal sufficiency of FPL's motion from the perspective of the trial judge but rather from the perspective of the party seeking disqualification. See

8

<u>Great Am. Ins. Co.</u>, 153 So. 3d at 390 ("We acknowledge some of the trial court's comments may have been intended as expressions of wit or erudition on his part. However, the question of disqualification focuses not on what the judge intended, but rather how the message is received and the basis of the feeling.").

We therefore conclude that the trial judge's comments would place a reasonably prudent person in fear of not receiving a fair and impartial trial. "We do not imply that the trial judge would actually be unfair or has an actual prejudice, we simply hold that under these circumstances," FPL's motion for disqualification is legally sufficient.  See <u>Cisneros</u>, 314 So. 3d at 683. Accordingly, we grant FPL's Petition but withhold formal issuance of the Writ as we are confident the trial judge will comply.

Petition granted.