# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 6D2024-2242
Lower Tribunal No. 2024-DP-000168

———————————————

In the Interest of N.S.B., a child.

DEPARTMENT OF CHILDREN AND FAMILIES and STATEWIDE GUARDIAN AD LITEM,

Petitioners,

v.

Y.B. and C.H.,

Respondents.

———————————————

Petition for Writ of Prohibition to the Circuit Court for Polk County.

March 28, 2025

GANNAM, J.

We issue this opinion in accordance with our order of November 13, 2024, granting the emergency petition of the Department of Children and Families (DCF) for a writ of prohibition to disqualify Judge Torea Spohr from further proceedings in the lower tribunal.

I.

On April 18, 2024, Judge Spohr granted DCF's shelter petition to remove an infant child, N.S.B., from the custody of her mother, Respondent Y.B. The facts

supporting the shelter order include that Y.B. and her boyfriend traveled with N.S.B. and her three-year-old sibling, in a car containing drugs and guns, to an apartment complex that Y.B. and her boyfriend knew was unsafe because they had been warned they would be killed if they went there. After Y.B. and the boyfriend visited an apartment in the complex (which neither could later identify), leaving the two children in the car unsupervised, Y.B. and the boyfriend returned to the car and attempted to leave the complex when another car blocked their exit. The other car's occupants engaged in a shootout with the boyfriend. Y.B. was able to exit the car with N.S.B., but N.S.B.'s sibling was shot and killed in the car. One of the other car's occupants was also shot and killed, and the boyfriend received a gunshot wound but survived. Y.B. insisted that she would maintain her relationship with her boyfriend. The judge found that Y.B.'s poor judgment posed a substantial risk of harm to N.S.B. and that N.S.B. should be sheltered with her father or in foster care.

On May 7, 2024, DCF filed an expedited involuntary petition for termination of parental rights (TPR), alleging Y.B.'s actions led to the death of one child and put N.S.B. at imminent risk of substantial harm. At a docket call, the judge advised the parties she wanted to talk about a case plan instead of setting a TPR hearing. She told DCF counsel, "you need to start talking about some kind of offer in this case, it's extreme." At a subsequent hearing, the judge advised DCF counsel, "I'm still confused as to why you haven't made any kind of offer to this woman."

On September 30, 2024, the judge heard Y.B.'s motion to modify N.S.B.'s shelter placement prior to the TPR hearing, to remove N.S.B. from her father's care and return her to Y.B. DCF and the Statewide Guardian ad Litem (GAL) argued that N.S.B. could not be placed with Y.B. without a home study. The judge reserved ruling on the motion to allow Y.B.'s counsel time to provide legal authority that would allow modification without a home study, and the judge advised Y.B. if she filed a motion to dismiss it would be heard the next day. Y.B. filed the motion to dismiss.

The next day, October 1, the judge resumed the hearing on Y.B.'s modification motion and heard the just-filed motion to dismiss over DCF's objection. At the hearing, the judge stated to DCF counsel:

> The overall issue is that we have a child that has been taken away from the mother and it does not look like a great case for you guys. I'm just not seeing it. I don't know how you are going to get there. And, it bothers me that she is still away from her child and I can't see a path to a victory for you.

The judge denied the motion to dismiss but granted modification, ordering N.S.B.'s return to Y.B.

At a hearing on October 7, the judge took up GAL's motion to stay the modification order and motion to reconsider and vacate the modification order, where GAL argued again that the court could not modify the placement of N.S.B. without a home study. The judge responded, "I think the statute puts us in a bad

place here, because you guys don't have a case." When GAL counsel reiterated the statutory requirement, the judge responded,

> I get that. And you know what I said? I said appeal it. I'm going to do it anyway because it's wrong. It's just wrong. And I'm just not going to abide by it. I get that statute says that. I fully understand it. But what is right to be done here is to return this child to her mother.

The judge denied the motion to dismiss and continued the hearing on the motion to reconsider and vacate the modification order.[1]

On October 21, 2024, DCF filed a motion to disqualify the judge, alleging that DCF had an objectively reasonable fear that it would not receive a fair trial because of the judge's statements demonstrating she had pre-judged the evidence and that she would not abide by controlling statutes. The judge summarily denied the motion on October 22. The same day, DCF filed an emergency petition for writ of prohibition in this Court seeking disqualification of the judge.

---

[1] The same day, October 7, GAL filed an all writs petition in this Court (no. 24-2141) seeking a stay of the modification order pending certiorari review. GAL argued that modifying N.S.B.'s shelter placement to return N.S.B. to Y.B., prior to the TPR hearing and without home study evidence, was a departure from the essential requirements of law, citing section 39.402(7), Florida Statutes (2024) ("If the child's safety and well-being are in danger, the child shall be removed from danger and continue to be removed until the danger has passed. If the child has been removed from the home and the reasons for his or her removal have been remedied, the child may be returned to the home."). We granted the petition and stayed the modification order. Both GAL and DCF filed certiorari petitions in this Court (no. 24-2421) seeking our review of the modification order.

On October 23, 2024, this Court entered an order for Respondents to show cause as to why DCF's petition should not be granted (the "Show Cause Order") and stated that the order operated as a stay of the trial court proceedings under Florida Rule of Appellate Procedure 9.100(h). This Court served a copy of the order on the judge. The same day—in violation of the stay imposed by our Show Cause Order— the judge entered an order striking several of DCF's witnesses for the final TPR hearing which had been scheduled for the next day. Y.B. then filed a motion to further strike, and prohibit from testifying at any future trial, all DCF witnesses who did not appear at trial the following day.

The next day, October 24—in further violation of this Court's stay—the judge convened an evidentiary hearing on the just-filed motion to further strike witnesses, announcing her intention to review DCF's investigation and prosecution of its case "from shelter," to determine "what's been done and what has not been done and when things got done." The judge began by asking DCF to identify which of its witnesses were present. DCF counsel objected because of this Court's stay:

> MR. MONAHAN: . . . . Your Honor, I don't think it's appropriate to have any discussions on this case --
>
> THE COURT: Mr. Monahan.
>
> MR. MONAHAN: -- based on the Sixth DCA's ruling and staying the matter. So we would object to any further discussions in this case until that is resolved.
>
> THE COURT: Okay. We're going to do it anyway.

MR. MONAHAN: Okay. Just for the record, Your Honor, we object.

THE COURT: I understand, Mr. Monahan.

MR. MONAHAN: We don't believe that this is appropriate.

THE COURT: I disagree with you.

MR. MONAHAN: I understand, Your Honor, but just, again, for the record, this is not appropriate. The case and the matter is stayed by the Sixth DCA.

THE COURT: Mr. Monahan, I heard you. I need you to hear me.

MR. MONAHAN: I just want to make sure it's on record. We have a court reporter and --

THE COURT: It is on the record, Mr. Monahan.

MR. MONAHAN: Thank you, Your Honor.

The judge interrogated DCF counsel for almost an hour about DCF's investigation of the case and preparation of its witnesses for trial, allowing Y.B.'s counsel to freely interject comments on DCF's answers. The judge also called one of DCF's trial witnesses to the witness stand, placed her under oath, and conducted her own examination of the witness. GAL counsel later objected because of this Court's stay, to which the judge responded, "I'm not ruling on anything. We're making a record." At the conclusion of the hearing, the judge ordered the parties to return for a status conference on November 14.

Following the October 24 evidentiary hearing, DCF moved this Court to compel the judge to comply with this Court's stay. On the afternoon of October 25, this Court entered an order directing the judge to comply with the stay, but not before the judge had issued yet another order in violation of the stay.

On October 30, GAL joined and adopted DCF's petition to this Court for writ of prohibition. On November 13, this Court entered its order granting the petition, disqualifying the judge from any further proceedings in the case and quashing all orders entered by the judge following the Show Cause Order.

## II.

DCF's petition for writ of prohibition is the appropriate vehicle for seeking this Court's review of the trial judge's denial of DCF's motion to disqualify her. *See Torres v. Orlick*, 386 So. 3d 1038, 1039 (Fla. 6th DCA 2024). We review the denial de novo. *Id.*

Though the judge's denial of the motion was an unelaborated "DENIED" stamped on the motion's first page, the only ground on which the judge could have properly denied the motion was legal insufficiency. Fla. R. Gen. Prac. & Jud. Admin. 2.330(h). DCF's motion, however, was procedurally and substantively sufficient. The motion was timely and included facts, which we must accept as true, specifically describing prejudice or bias of the judge against DCF and in favor of Y.B., and DCF's attestation that it reasonably feared it would not receive a fair hearing on its

7

TPR petition. *See* § 38.10, Fla. Stat. (2024); Fla. R. Gen. Prac. & Jud. Admin. 2.330; *Torres*, 386 So. 3d at 1039.

"It has long been said in the courts of this state that 'every litigant is entitled to nothing less than the cold neutrality of an impartial judge.'" *Great Am. Ins. Co. of N.Y. v. 2000 Island Blvd. Condo. Ass'n*, 153 So. 3d 384, 385 (Fla. 3d DCA 2014) (quoting *State ex rel. Davis v. Parks,* 194 So. 613, 615 (1939)). "Trial judges must studiously avoid the appearance of favoring one party in a lawsuit . . . . A trial judge crosses the line when [s]he becomes an active participant in the adversarial process . . . ." *Torres*, 386 So. 3d at 1039 (internal quotation marks and citations omitted). "While a trial judge may form mental impressions and opinions during the course of hearing evidence in a case, the judge is not permitted to pre-judge the case." *Kates v. Seidenman*, 881 So. 2d 56, 58 (Fla. 4th DCA 2004).

In the three weeks preceding DCF's motion to disqualify, the judge's record statements about DCF's case included, "I can't see a path to a victory for you," "you guys don't have a case," and, "what is right to be done here is to return this child to her mother." During the same timeframe, the judge openly disregarded the controlling law ("I'm just not going to abide by it."), to DCF's detriment and Y.B.'s benefit. Either the unequivocal pre-judgment of DCF's case or the open disregard of controlling law was sufficient, alone, to give DCF a reasonable belief that it could not get a fair trial of its TPR petition. *See Great Am. Ins. Co. of N.Y.*, 153 So. 3d at

8

386 ("This startling remark, in and of itself, is sufficient to compel disqualification."); *Begens v. Olschewski*, 743 So. 2d 133, 133 (Fla. 4th DCA 1999) (granting disqualification of judge who stated "'that she did not care what cause of action that the plaintiff wished to add because the plaintiff was going to lose the case under any set of facts.'"). The judge's subsequent convening of an evidentiary hearing to "make a record" undermining DCF's case and bolstering Y.B.'s defense—in knowing violation of this Court's stay—removed all doubt.

### III.

For the reasons given in this opinion, we granted DCF's emergency petition for writ of prohibition on November 13, 2024, disqualifying Judge Torea Spohr from further proceedings in the case.

PETITION GRANTED; WRIT ISSUED.

TRAVER, C.J., and LAMBERT, B.D., Associate Judge, concur.


Meredith K. Hall, Appellate Counsel, of Children's Legal Services, Bradenton, for Petitioner, Florida Department of Children and Families.

Sara Elizabeth Goldfarb, Statewide Director of Appeals, and Laura J. Lee, Assistant Director of Appeals, of Statewide Guardian and ad Litem Office, Tallahassee, for Petitioner, Statewide Guardian ad Litem.

No Appearance for Respondents, Y.B. and C.H.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED